## GAYLE, ET AL. V. HUDSON, ET AL.

1. A bond in which Hudson and *Jones* are obligees, cannot be sued and re-
covered on at law, in the name of Hudson and *James*, alledging in the de -
claration, and proving that the latter, and not *Jones* was intended to be an
obligee, and the insertion of the wrong name was a mere mistake.  In
such case it is competent for a court of equity to reform the bond, ac-
cording to the intention of the parties, upon the mistake being satisfactori-
ly established.

Writ of Error to the Circuit Court of Dallas.

THE defendants in error, by the name of William Hudson
and Sylvester J. James, discontinuing their suit againsl Ro-
bert J. Lawrence, declared against George W. Gayle and
Matthew Gayle, in debt.  The declaration commences by
reciting that the plaintiffs did, on the 23d day of October,
1838, file their libel in the county court of Dallas against the
steamboat Fox, her tackle, &c. upon which such proceedings
were had, that the boat was regularly seized and the plaintiff,
Hudson, recovered a judgment against it, for the sum of
$166 60, and costs; and the plaintiff, James, recovered a
judgment against the boat for $465 85.  All which were
founded on the same libel, rendered at the December term,
1838, of the county court, and are still in full force and un-
satisfied.

It is then stated that it was ordered that the clerk of the
county court issue a commission to the sheriff of Dallas to ex-
pose to public sale the Fox, her tackle, apparel and furniture:
*Further*, that on the 19th February, 1839, James Read put
in a claim to the boat, and having been made a party to the
record in the cause by order of the Judge of the court below
sued out a writ of error, returnable to the June term, 1839,
and executed the usual bond, so that the judgments upon the
libel were superseded.

The declaration then alledges, that on the 23d March,

1839, the defendants by their writing obligatory, &c. executed with the consent of the libellants, acknowledged themselves held and firmly bound unto William Hudson and Sylvester J. Jones, (meaning by the latter Sylvester J. James,) "and none other persons," in the penal sum of one thousand dollars, &c. The condition of this bond recites, that an attachment at the suit of the " obligees and libellants had been levied on the steamboat Fox; which attachment was founded on the libel of the said obligees and libellants filed in the county court of said county, meaning the suit aforesaid, and the said George W. Gayle, for and on behalf of the owner of said boat, claiming the same, and for the purpose of replevying the same," &c., it is then provided that, if the stipulator, George W. Gayle, should pay such judgments as had been, or should be thereafter rendered on the libel, then the stipulation should be void, &c.

It is then alledged, that G. W. Gayle, " in consequence of the execution of the writing obligatory, did then and there receive said steamboat into his care, and under his control, and sold and disposed of the same, and has not re-delivered the same ; and further, plaintiffs aver, that the matters set forth in said writing obligatory, mean and refer to the suit of these plaintiffs against said steamboat Fox, and the proceedings therein, as in this declaration set forth." The declaration then states, that the judgments referred to have not been reversed, but the writ of error was dismissed by the Supreme Court, at the term to which it was returnable, yet the judgments, nor any part of either of them, have been paid by G. W. Gayle, though often requested, &c.

The defendants craved oyer of the writing obligatory, in the plaintiff's declaration mentioned, set it out and demurred; their demurrer being overruled, they pleaded sundry pleas: to the 1st, 2d, 4th, 6th, 7th, 10th, 14th and 15th the plaintiffs demurred, and their demurrers were sustained. An issue was submitted to the court upon the plea of *nul tiel record,* and judgment was given for the plaintiffs, that there were such records in the county and Supreme courts as the plaintiffs had alledged in their declaration. Issues being joined upon the several other pleas, were submitted to a jury, who returned a verdict for the plaintiffs, assessing their damage at

nine hundred and ninety dollars, on which a judgment was rendered.

On the trial, the defendants excepted to the ruling of the court. The bill of exceptions presents the following points: 1. The plaintiff offered in evidence the libel and consequent proceedings in the county and supreme courts, for the purpose of showing, in connection with other testimony, that the defendants in the execution of the bond, which is the foundation of the action, intended to make the plaintiffs instead of Wm. Hudson and Sylvester J. Jones, the obligees ; to the admissibility of this evidence the defendants objected, but their objection was overruled. 2. Plaintiffs then offered the record of a libel suit in the county court of Dallas, in favor of Owen Martin and others against the steamboat Fox, her tackle, &c., in connection with the clerk of the court, tending to show that these were the only suits of this character, and that there was none in favor of Hudson and Jones. They also adduced a bond executed by the defendants in the latter case, and proved that both suits were brought and determined at the same term. This record and bond was offered for the purpose of showing that the bond in suit was intended to have been executed in favor of the plaintiffs. Defendants objected to the admission of this evidence, but their objection was overruled. 3. The plaintiffs next offered the clerk of the county court of Dallas, to prove the execution and delivery of the bond declared on, which he had previously attested as follows, viz : " The signing and execution by G. W. and M. Gayle, acknowledged to me. James D. Craig, clerk." At the time of the signing and attestation of the bond, the clerk was in his office, exercising the duties thereof. This evidence was offered under the issues upon the special pleas of *non est factum.* To its admission the defendants objected on the ground of interest, but their objection was overruled. 4. It was then proposed by the plaintiffs to adduce the bond as evidence; but the defendants objected on the ground of a variance between the bond declared on, and that offered, but the plaintiffs stated that they would produce other evidence that the defendants executed and delivered the bond to the plaintiffs by the names in which they sued, the objection was overruled. 5. The plaintiffs then offered the transcript of a record of the supreme

court showing the disposition of the libel suit in the supreme court in the case of the suit commenced by Hudson and James; but the defendant objected to its admission on the ground of a variance between the names of the parties mentioned in the record, and the obligees in the bond, and the objection was overruled. 6. A witness was then adduced by the plaintiffs, who stated that the bond offered in evidence was filled up, executed and delivered to him as the then sheriff of Dallas, and accepted by him as such. To the competency of this witness the defendant objected, because of his official responsibility; but it appearing that more than six years had elapsed since the acceptance of the bond by the witness, and that in all his acts he was governed by the directions of the plaintiffs' attorney, the objection was overruled. 7. It was was also proved on the part of the plaintiffs, in despite of an objection by the defendants, that the bond in the case of Owen Martin, and others, was executed on the same day with that sued on. 8. It appeared from the record and other evidence, that the sheriff was about selling the steamboat Fox, under process in both the libel suits, and that the bond declared on, was intended to replevy the boat. The plaintiffs then introduced as a witness, C. G. Edwards, Esq. to prove that the condition of the bond sued on, was filled up by him, before it was signed by the defendants. Witness stated, that in the event of a recovery in this cause, he should probably charge a higher fee than he otherwise would, but there was no agreement or understanding to that effect. It was objected to this witness that he was interested, but the objection was overruled.

The defendants then prayed the court to charge the jury as follows: 1. If the defect in the bond, in respect to one of the obligees, could be cured with reference to the record, and proceedings in the suit mentioned in the declaration, and the evidence adduced, it should also be made to appear that the obligors, or one of them, knew that *James* instead of *Jones* was a party to these records and proceedings.

2. To authorize a recovery against the defendant, M. Gayle, it should appear that he, as well as his co-defendant "understood the difference and meant to execute their bond" to Hudson, and James, and not to Hudson and *Jones*, as expres-

sed therein ; and if the defect in respect to one of the obligees could be supplied by the records and proceedings referred to in the pleadings and evidence, it should appear that M. Gayle knew that James was a party to those proceedings, or some of them. If he did not know James was a party to them, or intended to be an obligee in the bond, no recovery could be had against him upon the bond, in favor of James. The charges thus prayed were refused, and instead thereof, the court instructed the jury, that they should be satisfied from the evidence, that the defendants intended to execute the bond in the case commenced by libel, at the suit of Hudson and James, and that the plaintiffs were the libellants in that suit.

The defendant's counsel prayed the court to instruct the jury further : 3. That if the "bond, and replevy of the boat, were not made and executed by the consent of the said obligees and libellants, as alledged in the declaration, that they should find the issue on the 16th plea, in favor of the defendants." This charge was given, but the court qualified it by instructing the jury, that they would be authorized to presume the consent of the obligees, from the bond being in their possession and under their control, or that of their attorneys, and from their instituting a suit thereon. It was proved "that the bond was taken and accepted" by the attorney at law of the plaintiffs in the libel suit, "without the plaintiffs' knowledge, and this suit brought on the same."

The defendants further requested the court to instruct the jury, that if the defendant, G. W. Gayle, did not, in consequence of the execution of the bond, receive the boat into his care, and under his control, and if he did not sell or dispose of the same, they should find the issue on the 17th plea, in favor of the defendants. This charge was given with the qualification, that if the sheriff upon the execution of the bond, relinquished further care and control over the boat, and so informed G. W. Gayle, giving him leave to take possession, and subsequently he did, as the agent of the claimants of the boat, place in the hands of the sheriff certain executions, which he directed to be levid on the boat, and sold the boat under their authority, then the jury should find this issue in favor of the plaintiffs. It is admitted that there was

some evidence to warrant the assumptions of the qualifications.

The plaintiffs prayed the court to instruct the jury, *lastly:* That if there was no evidence of the delivery of the bond to the plaintiffs, then it had no validity, and that handing it over to the sheriff was insufficient to make it operative; and if there was no evidence of any other delivery, they should return a verdict for the defendants. This charge was refused —it appearing as already stated, that there was a delivery to and acceptance by the attorney of the plaintiffs, in the suit against the boat, who had brought the present action upon the bond.

The several questions above stated, arising upon the evidence, the refusals to charge, and the charges given, are all duly reserved for revision.

R. SAFFOLD, for the plaintiffs in error. The *inuendos* in the declaration, if they may be so called, cannot aid the bond. [1 Chit. Pl. 384; 5 Johns. Rep. 226.] If it is uncertain to whom a security for the payment of money is payable, it will be inoperative, [Chit. on Bills, 160,] but a misdescription of the character of the payee will not vitiate, if from the whole instrument, it may be learned who was intended. [Id. 178.] But the mistake, and its correction, cannot be shown, and made by parol evidence. [8 Johns. Rep. 375; 5 Verm. 152.]

Parol evidence was inadmissible to show that the bond was intended to be taken in the case in which the plaintiffs had recovered a judgment against the steamboat Fox. Such evidence "can neither bend the bond to the record, nor the record to the bond." [2 Dev. Rep. 508; 2 Brock. Rep. 64, 72-3; 3 Ala. Rep. 593; 1 Id. 429, 431; 1 A. K. Marsh. R. 10; 5 Ark. Rep. 525, 531-2-3-4.] To fill up or vary a bond the authority must be express. [4 Ala. Rep. 720.] A bond should be delivered to a person *authorized to receive it*—there was no proof of such delivery in the present case.

C. G. EDWARDS, for the defendant in error. If the declaration contains *inuendos*, they may be rejected, because what

16

precedes them is sufficient; but they are averments, and unobjectionable in themselves. [5 Johns. Rep. 220 ; 2 Stew. Rep. 466; 2 S. & P. Rep. 60 ; 2 Ala. Rep. 699 ; 3 Id. 593 ; 5 Hals. Rep. 325; 10 Mass Rep. 360; 6 Sergt. & R. Rep. 12; 13 Johns. Rep. 38; Gould's Plead. chap. 3, §§ 30, 33.] In respect to the bond, they are equivalent to saying that it was made to the plaintiffs by the name and description in which the obligees are described.

The demurrer to the first plea was properly sustained. It is not indispensable that a bond should be filled up, or signed before it is sealed. [5 Mass. Rep. 538; 6 Id. 221; 1 Stew. Rep. 517 ; 4 Ala. Rep. 720 ; 4 McC. Rep. 239.] The first plea is also bad, because it does not show that the blank was material. [2 Dana's Rep. 142; 17 Sergt & R. 438.] But if this plea was good, defendants can't complain, because they have had the benefit of it in their amended plea, numbered 12.

In respect to the second plea, it was not necessary that the principal obligor or his sureties should have known James as a libellant. The inference deduced from a want of knowledge in this respect, is a *non sequitur.*

The fourth plea denies that there was a record in the county court of a case at the suit of the plaintiff, James. This is a departure from the declaration, which does not assume the reverse, and if the plea refers to the bond, the defendants are estopped from controverting its admissions. The sixth plea is substantially the same, and of course obnoxious to the same objection.

The 7th plea is also a departure from the declaration ; for the declaration does not alledge the consent of the obligees *eo nomine* as libellants, but the consent of the plaintiffs, who were in fact the libellants. Here too the defendants had the benefit of this defence, in an amended and sixteenth plea.

The tenth plea goes beyond and departs from the declaration, in using the word " possession," in respect to the bond, but the defendants had the full benefit of it, in the seventeenth plea. In respect to the fourteenth and fifteenth pleas, they negative a seizure on a libel in which Jones was a party,

a fact which the declaration does not affirm; consequently they offer an immaterial issue.

All the points raised upon the bill of exceptions relate to the mistake in the name of one of the obligees of the bond —the admissibility of the evidence and the competency of the witnesses by which the mistake was to be established and corrected. No objection is perceived to showing by oral testimony, in connection with the records, the number and title of suits instituted by libel, against the steamboat Fox— the names of the libellants, &c. The clerk and sheriff were competent witnesses—their interest was too remote and contingent.

The plaintiffs' counsel was not interested so as to disqualify him. [Starkie's Ev. 104, note; 1 Dall. Rep. 241; 1 S. & R. Rep. 32.] As to the obligor's knowledge of the mistake, it was immaterial—but if essential to their obligation to perform the condition, it was waived by their adoption of the bond subsequently. [Story on Agency, 247.]

It is recited in the bond, that G. W. Gayle was acting for and on account of the obligors—this recital it is insisted, operates as an estoppel. And the facts disclosed show, that while acting as an agent he controlled the boat, and it was disposed of according to his directions. The delivery of a bond to one person for the use of another, is good. [12 John., Rep. 536.]

In the case cited for the plaintiff in error, from 2 Devereux, there was no averment in the declaration, or replication, explanatory of the mistake; consequently the *allegata* and *probata* did not correspond : *besides*, there is no mistake in the condition of the bond.

No question is raised as to the authority to deliver the bond, nor was it necessary that the declaration should have averred that possession was delivered. [See 3 Ala. Rep. 593.]

COLLIER, C. J.—The most important inquiry in this cause is, whether it is allowable to show by parol evidence, a mistake in the name of one of the obligees, and whether *James* instead of *Jones* was intended. It is admitted as a general rule, where parties have entered into a contract in

writing, they are presumed to have expressed their agreement truly, and cannot be allowed to add to, vary, explain or contradict it by parol testimony, but it is insisted that the proof in the present case, and the purpose for which it was offered, does not come within the rule, or forms an exception to its operation. The parol evidence showing to what cause the bond was intended to apply, would show the mistake and furnish the means of its correction.

We will briefly consider the most direct authorities with respect to the point, that have come under our notice. Parol evidence, it is said; is not admissible to show that the person described as grantee was not the one intended. [Milling v. Crankfield, 1 McC. Rep. 262.] Or that a lease reserving rent to one person for his own use, was intended for the benefit of another. [Jackson v. Foster, 12 Johns. Rep. 488 ; see also, Comstock v. Van Deusen, 5 Pick. Rep. 163 ; Treadwell v. Buckley, 4 Day's Rep. 395 ; Bell v. Morse, 6 N. H. Rep. 205 ; Jackson v. Bowen, 1 Cain's Rep. 358 ; Den ex dem, &c. v. Coward, 2 Murp. Rep. 77 ; Hamilton's lessee v. . . . . . . . . ., 3 H. & McH. Rep. 437 ; Linscott v. Fernald, 5 Greenl. Rep. 496.]

So it has been held that parol evidence is inadmissible to show that *Robert*, the christian name of a party, used in a record, meant *Henry*. [Woody and Heirs v. Thalkeld, 1 A. K. Marsh. Rep. 10.] In Gould v. Barnes, 3 Taunt. R. 504, it was decided if a party enter into a bond by a wrong *christian* name, he should be sued thereon in the name in which he executes it. A declaration against him by his right name stating that he executed the bond by the wrong name, is bad. The bond would have estopped him from denying the name which he gave to himself, and if he pleaded in abatement, it might be replied that he was known as well by the one name as by the other. [5 Blackf. Rep. 60 and cases there cited.] The case of Thompson v. Gray, 2 S. & P. Rep. 60, contains a *dictum* which is not in harmony with that last cited. That was an action of covenant, for the recovery of rent upon an instrument by which Gray rented to Thompson for the year 1828, all his open land on the north west quarter of section 31, township 7, and range 11, west, except, &c., for which Thompson agreed to pay, on or before the

first of January, 1829, two dollars per acre.   The court be-
low admitted evidence on the part of the plaintiff, showing
that there was a mistake as to the description of the land,
viz: that it was in the sixth instead of the seventh town-
ship.   This court conceded that the county court erred in
receiving the evidence, yet thought the declaration might
have been so drawn as to have entitled the plaintiff to recov-
er in covenant; that the rule which will not allow parol evi-
dence to contradict a contract in writing, "extends only to a
material part of the contract."   "If there is a mistake in the
date of the instrument, the explaining of which can have no
effect upon the time of payment, or if the bond be executed
to A B, instead of C D, the plaintiff may state in his declara-
tion, that the bond was executed to him by the name of A B,
or that it was made on the 15th but by mistake dated the
16th, &c.; for these explanations cannot produce any injury
to the defendant, nor offer any inducement to perjury.   But
it would not be competent for the plaintiff to declare on the
agreement according to its face, and attempt by parol to
make proof which would vary the description of the instru-
ment so much from that contained in his declaration.   So we
believe in this case, the plaintiff might have, in his declara-
tion, stated the land was part of the sixth township, but was
by mistake described in the deed as part of the seventh, and
the contract was carried into execution according to the in-
tent of the parties.   It could not affect the rights of the par-
ties in the least, to admit such an explanation.   It would be
totally immaterial to the defendant, whether the land lay in
one township or another, so that he enjoyed the use of it,
according to the agreement, and it would be equally as im-
material a fact as to the date of a bond, or the christian name
of a payee."

Coleman v. Crumpler et al. 2 Dev. Rep. 508, is relied on
by the counsel for the plaintiffs in error, as strikingly analo-
gous in its facts, and entirely defensible in principle.   The
action in that case was debt, upon a bond executed by the
defendant to the plaintiff, in the sum of $2500, conditioned,
"that if the said John Crumpler, shall and will perform and
abide by such final decree as may be made against him by the
honorable Judges of the supreme court of North Carolina, in

the suit now pending in said court, wherein the said Isaac Coleman is complainant, and said John Crumpler and Mary Crumpler are defendants in equity," then, &c. Upon a trial before the jury, the plaintiff produced the record of a cause in the supreme court, between Isaac Coleman, plaintiff, and John Crumpler and Mary Coleman, defendants, in which the defendant, Crumpler, was directed to give a bond similar to the one declared on in this action, and which was by a subsequent order of court remanded for hearing to the court of equity, &c., and also a final decree of the court below, in which the defendant, Crumpler, was directed to pay the plaintiff $1150, with interest. He then offered to prove by the clerk of the supreme court, that the cause decided by that court, and afterwards by the court below were identical, but by mistake the name of Mary Crumpler instead of Mary Coleman was inserted in the condition. This evidence was objected to, and excluded, upon the ground that it tended to control the record, or the bond, and the judgment was affirmed on appeal. The supreme court considered it too clear for argument or authority that a written document cannot be made to mean any thing but what it imports in itself—it cannot be contradicted. "Parol evidence can neither bend the bond to the record, nor the record to the bond—it was therefore properly rejected." Again, "The record offered to support the breach, proved that there was a decree in a suit wherein *Isaac Coleman* was plaintiff, and *John Crumpler* and *Mary Coleman* were defendants, which *Crumpler* had failed to perform." This evidence did not support the issue on the part of the plaintiff. In Brown v. Gilman, et al. 13 Mass. Rep. 158, which was an action upon a written promise with a blank for the name of the promissee, the question was whether such a paper could be transferred to a third person so as to invest him with the right to sue in his own name. The court said, "authorities have been read to show that where a contract in writing has been made and signed, but the name of the party with whom it was made, omitted, the omission may be supplied by extrinsic evidence. Of this we have no doubt, where the name was omitted by mistake, or a wrong name inserted. And the authorities go no further." "This paper was never intended to contain the name of any

one but the signer. It was a personal acknowledgment between him and the person to whom it was delivered. That person alone can maintain an action upon it."

Where a bond recited, that the attachment issued before it was executed, it was held that the recital could not be contradicted by parol evidence. [Hutcheson v. Ross, 2 A. K. Marsh. Rep. 349.] But where, by a comparison of the bond and attachment, it appeared that the former was filed several days previous to issuing the latter, this was considered sufficient to show, that the recital was false. [Summer v. Glancey, 3 Blackf. Rep. 361.]

The citations we have made are the most pertinent we have been able to find touching the admissibility of parol evidence in a court of law, to contradict or vary written instruments, we will now inquire into the jurisdiction exercised by courts of equity upon this matter. In the interpretation of written instruments, courts of equity and law have concurrent jurisdiction, but where the question is, what the parties intended, to let in parol evidence of a mistake, with a view to its correction, the jurisdiction of equity is exclusive. But except in those cases where issue may be, and is taken upon the question of intention *as an independent fact*, the powers of that court are neither greater nor less than those of a court of law—both are limited to the office of interpretation, and neither can admit parol evidence to add to, or vary the terms of an instrument. [See Hunt v. Rousmaniere's Adm'r, 8 Wheat. Rep. 174, and 1 Pet. Rep. 15 ; Lyon v. Richmond, 2 Johns. Ch. Rep. 51, and 14 Johns. Rep. 501 ; Lammat v. Browby, 6 H. & Johns. Rep. 24 ; Naylor v. Wench, 1 Sim. & Stu. Rep. 561 ; Hubbard v. Martin, 8 Yerg. Rep. 498 ; Allen v. McMasters, 3 Watts' Rep. 181 ; Jushoe v. Proctor, 6 Monr. R. 311 ; Abbe v. Goodwin, 7 Conn. Rep. 377 ; Glassell v. Thomas, 3 Leigh's Rep. 113 ; Morris v. Edwards, 1 Hamm. Rep. 189 ; Stebbins v. Eddy, 4 Mason's Rep. 414 ; Quesnel v. Woodlief, 6 Call's Rep. 218 ; Macher v. McDowell, 4 Bibb's Rep. 473 ; Washburn v. Merrills, 1 Day's Rep. 189 ; De Reimer v. Cantillon, 4 Johns. Ch. Rep. 85 ; Pattison v. Hull, 9 Cow. Rep. 755 ; King v. Stubbs, 14 Sergt. & R. Rep. 206 ; Gibson v. Watts, 1 McC. Ch. Rep. 490 ; Paysant v. Ware & Barringer, et al. 1 Ala. Rep. N. S. 160 ; 3

Phil. Ev. C. & H's Notes, 1434-5, and cases there cited; Gray v. Woods, 4 Blackf. Rep. 432; 3 Starkie's Ev. 1018; 1 Story's Eq. 164-5; Helm v. Wright and another, 2 Hump. Rep. 72.]

In McCall, Smilie & Co. v. Harrison, 1 Brockb. Rep. 126, a deed of trust purported to be made for the benefit of John McCall & Co. though the debt intended to be provided for was due McCall, Smilie, & Co. Upon a bill praying relief by the latter firm, it was held that the mistake should be corrected, and that the debt intended to be secured by the deed should be paid to the complainants.

It is said, sometimes by mistake the written agreement contains less than the parties intended; sometimes it contains more; sometimes it simply varies from their intent by expressing something different in substance from the truth of that intent. In all such cases, if the mistake is clearly made out, by proof entirely satisfactory, equity will reform the contract, so as to make it conformable to the precise intent of the parties. But if the proofs are doubtful, and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief; upon the ground that the written paper ought to be treated as a full and correct expression of the intent, until the contrary is established beyond reasonable controversy. [See 1 Story's Eq. 164-5.]

If the names of the libellants were intended to have been inserted as the obligees in the bond, and one of them was not written so as to indicate him truly, there can be no doubt, but the plaintiffs could show the mistake; whether parol evidence would be admissible for that purpose in a court of law, is far more questionable. The remark in Thompson v. Gray, that the rule which inhibits the introduction of parol evidence to contradict a contract in writing, extends only to a material part, and if a bond be executed to A B, instead of C B, the latter may state in his declaration, that the bond was executed to him by the name of A B, is clearly a mere *dictum*, uncalled for by the decision of any point which was in judgment. The reason assigned by the court, viz: that the explanation could not produce injury to the defendant, nor offer an inducement to perjury, is palpably unsound, and if acted upon, would make the application of the rule diffi-

cult, embarrassing, and altogether uncertain.    This case then
cannot be regarded as an authority.    In Brown v. Gilman, et
al. *supra*, the ruling of the court upon the question before it
is not disputed.    The writing declared on was a promise to
pay a sum of money, subscribed by the promissor, with a
blank for the promisee's name, and it was held that it enured
only to the person to whom it was first delivered, with the
intention to impose a duty.    So it was nothing more than a
*dictum* of the court, that where a wrong name is inserted by
mistake, the name intended may be supplied by parol.    Bills
and notes payable to J  S, or "ship Fortune, or bearer," are
in legal effect payable to the bearer, and if payable to a fic-
titious payee, are considered as payable to bearer, and may be
declared on as such in favor of a *bona fide* holder, ignorant of
the fact against all the parties, knowing that the payee was
a fictitious person.    [Chitty on Bills, 9 Am. ed. 178.]    The
same author says, "if by mistake a bill or note has been
drawn in terms different from the intention of the parties, the
error may be corrected by consent of such parties, and this
without requiring any fresh stamp.    And it should seem, that
a *court of equity* will relieve in this respect, even against a
surety, as well as a principal, and compel all parties to give
a proper bill or note, according to the original intention."
[Ib. 189.]

In Sumner v. Glancey, as well as in Hutcheson v. Ross,
*supra*, parol evidence to show the recital in a bond, that an
attachment had issued, was adjudged to be inadmissible, and
in the former case the recital was only rendered harmless by
its denial in the attachment—a part of the record of the same
suit.    The cases of Woodyard's Heirs v. Thelkeld ; Gould v.
Barnes, and Coleman v. Crumpler, et al. *supra*, are most an-
alagous to the present—the latter strikingly so.    In each of
them, the points we have noticed were directly in judgment,
and all of them regard the name of a party in a bond, or re-
cord, as a material part of it, in respect to which, in the ab-
sence of fraud, it is not permissible to show a mistake.

The case at bar is clearly distinguishable in principle from
Meredith v. Richardson & O'Neal, at this term.    In that case
the variance was in the description of the *fieri facias* in the

17

forthcoming bond. The execution was described as having issued against the goods, &c. of J L, requiring to be made, for debt, damages, and costs, $2,743, and that which really issued, required to be made of the goods of J L, W H C, L J M, and A J S, for debt, damages, and cost, $2492 50. These discrepancies it was held, prevented the bond from operating, so as to give the obligees the statute remedy, but as they were not of the essence of the contract, but matters of recital, they did not vitiate it; and consequently it was competent to maintain a common law action against the obligors, and recover for the breach of the condition, and if necessary parol evidence was admissible to show to what execution the bond applied.

Chapel v. Congdon, et al. 18 Pick. Rep. 257, was a case similar in principle to the last cited. That was an action of debt on a bastardy bond, the condition of which recited, that the accusation was made in 1816, instead of 1833. The learned Judge who delivered the opinion of the court, remarked, "A mistake, obvious to all, has been made by the magistrate in the draught of the bond. If it be in a matter of substance, it will be fatal; if it be only redundant matter of description, which is not necessary to be literally proved, the claim may be supported, if enough remains to establish the identity." The gist of the accusation was, that the individual charged was the father of the child of which the plaintiff was then pregnant, which if born alive would be a bastard. "Whatever is essential to the description of that accusation may not be rejected." But the converse, it is said, is true, viz: that redundant allegations not essential to the charge, need not be proved, and may be rejected, if the allegations and proof, independently of them, are sufficient to maintain the accusation. The same principle was applied in Colburn v. Downs, 10 Mass. Rep. 20; Shrewsberry v. Boyston, 1 Pick. Rep. 105; Judge v. Morgan. These citations sustain not only Meredith v. Richardson & O'Neal, *supra*, but clearly show the difference between that case and the one now at bar. Starkie, in his treatise on evidence, (3 vol. 1529,) says, "It is a most general rule, that no allegation which is descriptive of the identity of that which is legally essential to the claim, or charge, can ever be rejected."

The mistake in the name of one of the obligees, is in a most essential and vital part. It enters into the legal obligation of the contract, and it results from what has been already said that it should not have been corrected by the admission of parol evidence on the trial at law. Whether the obligors would not be estopped, (if the estoppel could avail any thing) from denying that there were such proceedings, by libel, &c. as the condition of the bond describes, need not be considered, as the production of the record, to prove that the event had happened upon which the condition became absolute, would show a variance which, we have seen, would be incurable *at law*.

It is abundantly shown by the citations to the point, and what we have said, that a court of equity is entirely competent to reform the bond, so as to make it speak the intention of the parties, upon satisfactory proof being adduced of the mistake. Our conclusion is, that an action cannot be sustained in the name of the present plaintiffs. The view taken is decisive of the case; the judgment is consequently reversed and the cause remanded.