### Case No. 4,146.

### In re DUNHAM.

[29 Leg. Int. 589;[1] 9 Phila. 471; 2 Md. Law Rep. 485.]

District Court, D. New Jersey. Nov. 19, 1872.

James Buchanan, for assignees.
Frederick Kingman, for respondent.

NIXON, District Judge. A petition has been filed in this case by the assignees of the bankrupt, asking for an order upon John Aumack, a creditor, to show cause before the court, why he should not refund to the assignees the sum of $148.41, the amount paid by them to him on the 25th day of March, 1870, in excess of the sum due at that time, upon a bond and mortgage, which he held

[1] [Reprinted from 29 Leg. Int. 389, by permission.]

against the estate. Aumack was one of the mortgage creditors of the bankrupt. On the 2d of March, 1870, he made proof of his debt with security, claiming that he held a bond of the bankrupt, dated January 18, 1861, for the payment of $1,000, in one year after date, with interest at six per cent., that the interest due was $233, that the bond was secured by mortgage upon certain real estate of the bankrupt, and that he was entitled to have the debt paid in gold or its equivalent. The assignees were at Tom's River, on the 25th of March, 1870, for the purpose of paying off certain preferred claims against the estate; Mr. Aumack presented his mortgage for the payment. After some conversation between him and the assignees, as to whether the debt should be satisfied in gold or not, and to which I shall more particularly refer hereafter, they paid to him in currency the sum of $1385.16. The amount of principal and interest, at that time due upon his claim, was $1236.75, the excess of the payment, to wit, $148.41, was twelve per cent. added for the gold premium, to make the sum received by Aumack equivalent to a payment in gold. One of the assignees then drew upon the back of the mortgage, and Aumack signed, the following receipt: "March 25th, 1870. Received of A. C. McLean and C. Robbins, assignees, $1385.16, in full satisfaction of the within mortgage; the amount of principal and interest being $1236.75, and paid in currency at gold value of twelve per cent. premium. (Signed.) John Aumack." This settlement was made after the supreme court of the United States in Hepburn v. Griswold, 8 Wall. [75 U. S.] 604, and the court of chancery of New Jersey in Martin's Ex'rs v. Martin, 20 N. J. Eq. 421, had decided that the clause in the act of congress, passed February 25, 1862 [12 Stat. 345], making United States notes a legal tender in the payment of all debts, public or private, so far as it applied to debts contracted before the passage of the act, was unconstitutional; and before the reversal of the first-named case, by a majority of the court, in Knox v. Lee, and Parker v. Davis, 12 Wall. [79 U. S.] 457.

It is now contended by the counsel for the assignees, that the interpretation of acts of congress, by the supreme court of the United States, is final, and binds all inferior judicatories, national or state; that the effect of the last decision was to render lawful the payment of all indebtedness, in the notes of the United States, from the 25th of February, 1862, when such notes were made a legal tender for the payment of private debts; and that hence, the assignees may demand and receive back from the creditor, the twelve per cent. premium allowed by them in the satisfaction of the mortgage held by the respondent. It is undoubtedly true that the law, as to the constitutional effect of all acts of congress, must be taken from the supreme court, and that any change of the law, by the decision of a court of last resort, is retrospective and makes the law to be at the time of the first decision, as it is declared to be in the last decision. It was so held by the chancellor of this state in Stockton v. Dundee Manuf'g Co., 22 N. J. Eq. 56, but with this important qualification, that the last decision only changes the law "as to those transactions that can be reached by it." All contracts that are executed, all matters that are closed by the parties before the change effected by the last decision takes place, in the absence of fraud, are beyond the reach and influence of any retrospective action of the law caused by such change. What, then, are the facts of the transaction which is sought now to be opened? Has anything been left by the parties, contingent upon a subsequent construction of the legal tender act?

I have examined the testimony taken, and the fullest import of the proof is, that the assignees understood that they might demand a repayment of the premium, if any change in the views of the court should afterwards take place. There is no evidence that the mortgagee knew of or assented to any such arrangement. There was some talk at the time that, if a rehearing of the case should be ordered by the court, there would perhaps be a reversal of the previous decision, but one of the assignees, who seems to have done the chief part of the talking, admits, upon being recalled, that it is quite probable Mr. Aumack did not hear the suggestion that he would, in any contingency, be called upon to pay back the premium. But admit that he did hear them. Can the court be expected to get at the intention of the parties from their loose conversations, when they afterwards came to a settlement and reduced its precise terms to writing? Hunt v. Rousmanier, 8 Wheat. [21 U. S.] 211. The receipt drawn by one of the assignees at the time, and signed by the respondent, is the legal evidence of what the parties agreed to, and did, and that shows that the assignees paid, and that Aumack accepted, $1385.16, in "full satisfaction of the mortgage, the payment being made in currency at gold value of twelve per cent. premium."

The counsel for the assignees, in the argument, states, that the receipt was framed to enable the assignees to make reclamation of the gold premium, if subsequent events should favor the demand. If such was their design, they have been unfortunate in the language employed to convey their meaning. No hint is anywhere indicated, that under any circumstances was the settlement to be disturbed. If there had been no change of views in the court respecting the right of the mortgagee to demand gold, and if the premium had advanced to twenty-five or fifty per cent. after the payment of the mortgage, would it be claimed that the respondent could now invoke the aid of this court to compel the assignees to pay to him the advanced premium? And, yet, looking at the terms of the receipt as embodying the contract of the

parties, there would be quite as much reason for that as for listening to the assignees' present demand for restitution. Authorities were quoted upon the argument to show that courts have, and therefore may, relieve parties against mistakes arising from ignorance, either of the law or of the facts. But no such ignorance seems to have existed here. There was no lack of knowledge and there was no concealment on either side. Both parties knew what the facts were, what the law had been declared to be, and had equal means of anticipating what it would continue to be. They concluded under these circumstances a settlement, which the court is now asked to open and reform. But conceding that ignorance did exist, I can find no well-considered case where the court has relieved the party from a contract or agreement entered into by mistake, where the mistake was one purely of law, although many may be found where such relief has been granted when attended with misrepresentation, undue influence, misplaced confidence, or any badge or indication of fraud. Lyon v. Richmond, 2 Johns. Ch. 59; Clark v. Dutcher, 9 Cow. 674; Wintermute's Ex'rs v. Snyder, 3 N. J. Eq. 490; Hunt v. Rousmanier, 1 Pet. [26 U. S.] 15; Bank v. Daniel, 12 Pet. [37 U. S.] 55. The maxim "Ignorantia legis neminem excusat," which, as Judge Story remarks, is so old as to have been long laid up among the settled elements of English jurisprudence, is applicable to the case under consideration. Both parties have acted honestly, and they are left by the law to stand just where they voluntarily placed themselves.

A question quite analogous to the one I am considering was before the supreme court of California in Kenyon v. Welty, 20 Cal. 637, and after a careful examination of the authorities, the court held that where a contract was entered into by the parties under a mutual supposition that the law affecting the subject of the contract was in accordance with a previous decision of the supreme court upon a similar state of facts, it would not be set aside because of a subsequent decision of the same court overruling the former one and declaring a different rule upon the subject.

The assignees have not exhibited a case where they are entitled to relief, and the rule to show cause must be discharged.