[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 605 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 606 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 607 
We see no ground upon which this action can be maintained. The bond and mortgage from Woodruff to the bank department was a valid security in the hands of Andrus, the assignee, for $5,000. It was executed in 1852, and he purchased it April 21, 1863, at the solicitation of Mrs. *Page 608 
Cadwell, the owner of the equity of redemption in the mortgaged premises. It was then past due, and he promised Mrs. Cadwell to extend the time of payment for eight years, from January 1, 1863, upon her joining with her husband in a bond to pay the debt at the expiration of that time, with semi-annual interest. The bond was given, and this act, uniting with the antecedent promise, created a valid agreement for the extension of the mortgage debt. But it was not the intention of the parties to discharge the obligor in the original bond or to affect the lien of the mortgage; nor did the giving of the new bond, in law, operate as a novation of the debt. The purpose of the transaction is plain: Mrs. Cadwell desired to have the time of payment extended, and Andrus consented, upon Mrs. Cadwell and her husband becoming personally bound for the ultimate payment of the debt. The new bond was taken simply as additional security. This appears, not only from the circumstances under which it was given, but from the terms of the instrument. It expressly provides that payments made upon it shall apply on and toward the principal and interest on the original bond and mortgage; showing that, in the contemplation of the parties, the original debt was to remain; and the recital that it was given to secure the same indebtedness, was inserted simply to exclude the inference that it constituted another and distinct liability. The taking by a creditor of a new obligation for a pre-existing debt, does not discharge the latter unless it is so agreed; and the intent that a new security shall extinguish the original indebtedness must be proved, or else it will be regarded as still subsisting, and the new obligation will be deemed to have been taken as security only. (Vail v. Foster, 4 N.Y., 312; Noel v. Murray,
13 id., 167.)
Mrs. Cadwell purchased the mortgaged premises subject to the mortgage, and the land thereupon became the primary fund for the payment of the mortgage debt, and the mortgagor stood in the position of a surety. If the extension of the time of payment had the effect of discharging him from his personal liability on the bond, the debt nevertheless continued *Page 609 
as a valid claim against the land to the same extent as if no equity had intervened affecting the personal liability of the original obligor. (Tripp v. Vincent, 3 Barb. Ch., 613.) In August, 1870, when Lance, the defendant's intestate (who had become the owner of the securities), demanded payment of the mortgage, there was a present right to enforce the lien. The eight years' extension had not fully expired, but the right to a credit for the balance of the time had, by the terms of the new bond, become forfeited by the omission to pay the interest, which fell due July first, for thirty days thereafter; and there is no ground upon which the claim made by the plaintiff, that Lance was estopped from insisting upon the default, can be supported. His declaration made before he became the owner of the securities, to a third person, who so far as it appears had no interest in the question, and without any intention that it should be communicated to the plaintiff, that the interest was paid in full, did not create an estoppel in pais. When therefore, Lance, in August, 1870, demanded payment of the mortgage he was insisting upon a strictly legal right. He required payment in coin. Whether a coin payment could be enforced was a question of law, depending upon the validity of the legal tender act as applied to debts contracted before its passage. The plaintiff acceded to the claim of the creditor, and paid the debt in gold, accompanying the act however with a written protest that a gold payment could not be lawfully required. As the law at that time was declared to be, by the Supreme Court of the United States, inHepburn v. Griswold (8 Wall., 303), the mortgage was payable in gold. It stood as a security for a debt contracted in 1852, which was not discharged. The right of the creditor, who was seeking to enforce the original security, was not affected by the consideration that the new bond would be discharged by payment of $5,000 in currency. Payments in currency on the new security were by its terms to be applied on the original bond and mortgage, but if that was payable in gold, they would be credited at their gold value. The creditor in demanding gold required nothing *Page 610 
but what the law as then declared authorized him to demand, and the plaintiff in paying it only complied with his legal obligation as the courts then construed it.
But if there was no legal right on the part of the creditor to demand payment in gold, or any obligation on the part of the plaintiff to pay it, and payment in gold was made under a mistake of law, the plaintiff cannot recall it. If he voluntarily yielded to the claim, and there was no duress of person or of goods, or fraud on the part of the creditor, the payment concludes him; and he could not avoid the force or effect of the act of payment, as an admission, or reserve the right to draw the matter into controversy thereafter, by paying under protest. The act of payment was voluntary, and if he intended to litigate the right, he was bound at the time to take his position and resist the demand made upon him.
Nor can the action be maintained because the payment was made by the plaintiff in ignorance of the fact of the existence of the new bond, or that the defendant concealed the knowledge of it from him. Whether there was another bond was an immaterial circumstance. The new bond did not in any respect qualify the rights of the parties, and if its existence had been known it would have furnished the plaintiff no ground for resisting the payment of the mortgage. It cannot be presumed that the conduct of the plaintiff would have been influenced by knowledge of a fact which was irrelevant to the matter he was called upon to decide; and ignorance of an immaterial circumstance is not in law a ground for recalling a payment made voluntarily and under a claim of right.
This leads to an affirmance of the order of the General Term, with judgment absolute on the stipulation against plaintiff, with costs.
All concur.
Order affirmed and judgment accordingly. *Page 611