CHARLES F. DAVENPORT v. CITY OF ELIZABETH.

1. An action will not lie for the money paid on a municipal assessment for benefits, unless such assessment has been judicially annulled.
2. And this is the doctrine even though such assessment has been laid under an unconstitutional provision.

On error to the Supreme Court.

This case was tried in the Union Circuit Court by Mr. Justice Van Syckel, a jury being waived, and his conclusions, as stated by himself, were as follows :

"This action is brought to recover from the city of Elizabeth the sum of $1119.80, with interest, being the amount paid by Davenport to the city upon an assessment made against his lot for a wooden pavement. The assessment was made under the provisions of the same charter which was considered in *Bogert* v. *City of Elizabeth*, 12 *C. E. Green* 568, and which, according to that case, does not provide a legal mode for imposing the assessment, but in this case no proceedings have been taken to set aside the assessment.

"I think that the plaintiff cannot recover in this action, for two reasons—

"*First.* The assessment must be set aside before suit can be maintained to recover back the money paid upon it. In *City of Elizabeth* v. *Hill*, 10 *Vroom* 555, where money had been paid on an assessment under the same charter, the court said: 'The money was paid on an assessment which, at the time of the payment, was a subsisting assessment which, until reversed, was legally binding on the city, and the satisfaction of which operated as an extinguishment of the liability of the plaintiff to contribute, in respect of his ownership of lands, to the costs of the improvement. But on the reversal of the assessment in the proceedings on *certiorari*, the situation was completely changed. The plaintiff's property was no longer discharged

from liability to a new assessment for the expenses of the improvement.'

"There is nothing in the Bogert case inconsistent with this view, for in this case the land owner, having paid the assessments, had the advantage of being shielded from the imposition of any new or further assessment while the original assessment subsisted.

"The plaintiff is in the enjoyment of the benefits which resulted to his property by reason of the improvement, and the money having been paid voluntarily by him and accepted by the city, he will be permitted to gain an undue advantage if he is allowed to recover it back before he puts the city in a position to make a re-assessment by procuring the first assessment to be set aside.

"*Secondly.* The plaintiff had a claim for about $3300 against the city, which he had been unable to collect for a year or more, and on the 8th of April, 1875, he again applied to the comptroller for payment. He refused to pay without deducting the assessment in question. The plaintiff objected, but finally accepted the money due him from the city, after deducting the amount of this assessment, although the plaintiff protested against the deduction at the time, yet the city refused to pay until he assented, and by such assent, however unwillingly given, he gained a benefit to himself which he would not otherwise have had. He cannot, after inducing the city, by this consent, to pay him the claim he held against the city, repudiate his agreement and say that his assent to this arrangement, so far as it was beneficial to the city, was involuntary, and at the same time retain the advantage he derived from the transaction."

For the plaintiff, *W. J. Magie.*

For the defendant, *B. Williamson.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This suit was brought to recover money paid on an assessment for benefits, made against

the plaintiff for his quota of the cost of a pavement laid in front of his property, situated in the city of Elizabeth, under a municipal ordinance, the alleged right of action being asserted to arise from the fact that the charter of the city did not provide a constitutional mode of making such assessment.

The first legal proposition on which the learned justice who heard this case acted in the rejection of the plaintiff's claim, was that it was necessary that the assessment in question should have been set aside before a suit could be maintained to recover the money paid upon it. This is the doctrine of the case of *City of Elizabeth* v. *Hill*, decided by the Supreme Court, and reported in 10 *Vroom* 555, and the question, therefore, is whether that decision is based on correct principle. That adjudication, as I understand it, maintains the broad doctrine that money paid on an assessment of this nature cannot be recovered through an action by the party paying it, no matter how illegal such assessment may be, so long as it remains uncanceled by judicial authority. It is from design that I state the rule in this unrestricted form, because it is in such form that I wish to give it my approval; for it seems to me that this result is the legitimate consequence of the application of general legal principles to the law as it exists under judicial exposition and in practice in this state.

My theory is that, in our jurisprudence, a payment of an assessment of this nature should be considered to possess very much the same force which is given, by operation of law, to a payment made under the influence of legal process. It is not in doubt that, in this latter class of cases, payments are to be taken as, *per se*, voluntary, and therefore conclusive. The citation of one or two of the decisions that relate to the effect of payment of moneys *post litem motam*, will serve to show the tendency and scope of this principle as well as its reason. My reference will be to cases only which are concerned with payments made before judgment on initial process.

A leading precedent in this department is that of *Brown* v. *McKinally*, 1 *Esp.* 279, the case presented being that of a sale, at an agreed price per ton, of a lot of iron, with the exception

of such part of such lot as was of a designated kind, such excepted portion being of an inferior quality; the iron was delivered in gross, without being sorted, the vendor demanding the price stipulated to be paid for the better article. Suit being brought, McKinally paid the sum thus unjustly required, giving notice that he did so without prejudice, and that he meant to sue to get back the overplus. The reported action was with that end, but Lord Kenyon refused to sanction the proceeding, saying "that the money was paid voluntarily, and so could not be recovered under the circumstances." In *Hamlet* v. *Richardson,* 9 *Bing.* 644, the same legal feature is exhibited in a strong light, for in that case the plaintiff alleged that he had paid money, by mistake as to matter of fact, after a writ had been issued, and the jury found a verdict in his favor, stating that the payment had been made in ignorance of essential circumstances; but the court set aside the verdict, for the single reason that the money had been paid in the course of legal proceedings. There is a long line of similar judgments, but the foregoing will suffice to clearly exemplify the rule that, in the absence of fraud, if money has been paid after "legal proceedings actually commenced," it cannot be recovered." It should be kept in mind that in the instances quoted the payments were made before judgment, and on merely mesne process.

Now it seems to me that if, with these cases before us, we inquire for the groundwork, in right reason, on which they rest, we will find that it consists in two considerations—first, for the reason that the person paying the demand in suit has been offered an opportunity to resist it; and second, that the public well-being requires that a definite bound should be assigned to litigation. The claims of distributive justice are fully satisfied by the proffer of the means of defence against the unjust demand. The claims of the community against unnecessary litigation can be enforced only by an adherence to the well-known maxim, "*Interest reipublicæ ut sit finis litium.*" And these considerations, in my opinion, afford a complete justification of the doctrine in question.

The inquiry then arises, is not the situation, under the force of the laws of this state, of the payer of one of these assessments similar, in all substantial respects, with that of the payer of a claim in suit? These assessments are made by public officers, in prescribed modes, upon notice to the parties interested, and with an opportunity to such parties of watching the proceedings, and of presenting their views; and if, at any time in this course of law, or in its result, such proceedings are unjustly illegal, an adequate remedy is at hand, for, whatever may be the practice in other jurisdictions, in this state, a writ of *certiorari* is a perfect safeguard against unwarranted taxation of every description, for by its means every assessment of this kind is put, in the first instance, under the supervision of the Supreme Court, and, in the end, of this court. This remedy, too, is so efficient that, from the time of its issuing, it is a *supersedeas* of the proceedings of the officers to whom it is addressed. Nor can it be justly objected that this mode of redress is defective, inasmuch as this writ is grantable only at judicial discretion, because such discretion is regulated by precedents and legal principles, so that the process cannot be withheld, in the absence of laches in the applicant, whenever there is a legal right that is subject to its protection, and such right is threatened with invasion. Such a remedy must be regarded, in a scientific sense, as complete, and such is the process for his defence offered to the taxpayer, and if, putting it aside, he pays the tax, in my judgment, the reasons above shown that operate to make a payment before suit being brought, conclusive, should render also this payment conclusive. In both classes of cases the law affords ample means of defence, which are rejected, and in each class the most cogent reasons, growing out of public policy, are present, why a payment, if made, should be an end of the matter. If, after the payment of one of these assessments, a suit may be brought to reclaim such moneys, such right of action will continue for six years, and the consequence is that, for such period, the right to the moneys so paid will remain in suspense, and the public revenues, under

Davenport v. City of Elizabeth.

the effect of such a principle, will be, at all times, uncertain. So, under such a system, the parties suing will be entitled to their costs, and the loss from that source would be very serious. Such a state of things I cannot but consider as repugnant, in a very large degree, to the public interests. In view, then, of the remedy afforded and neglected, and of these political considerations, in my opinion the true doctrine is that the act of paying the assessment concludes the right of the party making it, at least so long as the assessment itself remains in existence.

And such a payment, however made, it appears to me is to be taken as voluntary, for I am entirely opposed to the notion, which has been entertained elsewhere, that the effect of such act is dependent on the circumstance whether it has been done under legal coercion. My conviction is that when the assessment has been made in good faith and under color of right, nothing that can be done in the way of its enforcement will convert such payment into an involuntary act. Courts have frequently held that a payment of a tax under protest will not have the effect of reserving the right to sue for the money so paid, and such was the decision in the case of *Flower* v. *Lance,* 59 *N. Y.* 603; but, in my estimation, the rule, to be of any practical value, must go beyond this and have the measure already attributed to it, for otherwise the party desirous of paying, with a reserved right of reclamation by action, can defer payment until the public officer has committed an act sufficiently aggressive, and in this easy way defeat the entire operation of the rule. I repeat that the true doctrine is that the intendment that such a payment is voluntary, is not dependent upon collateral circumstances, but is a presumption *juris et de jure* from the very act itself.

I shall vote to affirm the judgment on this ground.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DALRIMPLE, DEPUE, DIXON, KNAPP, REED, SCUDDER, WOODHULL, DODD, GREEN, LILLY, WALES.    13.

*For reversal*—None.