ANTISDEL v. WILLIAMSON et al.

(Supreme Court, Appellate Division, Fourth Department. January 18, 1899.)

1. GUARANTY—CONSIDERATION—SEAL—PRESUMPTIVE EVIDENCE.
    In an action on a sealed guaranty; it was not error to refuse to direct a verdict for the guarantors, whose evidence tending to show want of consideration was not met by proof other than the contract itself, since a consideration for a sealed instrument is presumed, and whether such presumption was overcome was a question for the jury.

2. SAME—EXTENSION OF TIME—RELEASE OF SURETIES.
    Where the uncontradicted evidence showed that plaintiff's assignor had extended the time of payment of the debt without the knowledge or consent of defendants, who had guarantied it, it was error to refuse to direct a verdict in their favor in an action on the guaranty. ·

3. SAME—AGREEMENT TO EXTEND—PARTIES.
    The fact that an agreement extending the time of payment of a mortgage on land which defendants had guarantied was made with the subsequent purchaser of the land who did not assume the mortgage, and not

with the principal debtor, will not prevent its operation to discharge the guarantors, if made without their knowledge or consent, since the land was the primary fund for the payment of the mortgage, and the agreement had the same effect as if the purchaser had assumed the mortgage.

4. SAME—PAROL AGREEMENT.

A parol agreement extending the time of payment of a debt, based on a sufficient consideration, without a surety's knowledge or consent, discharges him.

Appeal from trial term, Oneida county.

Action by Mary E. Antisdel against Frank Williamson and others. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Reversed.

On the 19th day of February, 1889, Cornelia Hall executed and delivered to one George L. Parker her bond and mortgage, conditioned for the payment of the sum of $4,000 and interest in accordance with the terms therein expressed; and thereafter, and on the 19th day of July, 1889, George L. Parker assigned the same to his aunt Sarah C. Parker. Apparently, this transfer was taken by Mrs. Parker as an investment, which was regarded as a desirable one, as, at the time the same was completed, nothing was said by her with regard to any other or additional security. Shortly thereafter, however, Charles A. Parker, another nephew of Sarah C. Parker, caused to be drawn up a certain instrument guarantying the payment of the bond and mortgage in question, which was duly executed by himself and by the defendants Frank Williamson, Henry Williamson, and William Selover, and the same was thereupon delivered to his aunt Mrs. Parker. This instrument was in the language following, viz.:

"For and in consideration of the sum of one dollar to me in hand paid, and the receipt whereof is hereby acknowledged, we, the undersigned, do hereby guaranty the payment to Sarah C. Parker, of Auburn, N. Y., of a certain bond and mortgage, bearing date the nineteenth day of February, 1889, made by Cornelia Hall, of New York City, to George L. Parker, of Binghamton, N. Y., to secure the payment of the sum of ($4,000) four thousand dollars. Said mortgage was recorded in the clerk's office of the county of Orange on the 23d day of February, 1889, in Book No. 302 of Mortgages, at page 359, and was assigned to Sarah C. Parker, July 19th, 1889, by George L. Parker.

"In witness whereof, we have hereunto set our hands and seals, this 10th. day of August, 1889.
                                        Frank Williamson.    [L. S.]
                                        "Wm. Selover.         [L. S.]
                                        "Henry Williamson.    [L. S.]
                                        "Charles A. Parker.   [L. S.]"

The bond and mortgage thus guarantied contained an interest clause; and upon the 20th day of February, 1890, default having been made in the payment of the semiannual interest which became due that day, Mrs. Parker elected, under the terms of the mortgage, to declare the entire principal sum to be due and payable; and thereafter, and in April following, she commenced a foreclosure action, the parties defendant thereto being Cornelia Hall, William J. Penoyer, who was then the owner of the mortgaged premises, and Charles Longworth, a tenant. The plaintiff's attorney in this foreclosure suit was Mr. Hull Greenfield, of Moravia, in the county of Cayuga; and, shortly after the commencement of the action, negotiations were had between him and an attorney from the city of New York, by the name of Allison, who had appeared in the action for the defendant Longworth, for a settlement of the suit and a reinstatement of the mortgage. These negotiations resulted in the assignment to the mortgagee of another mortgage, upon 100 acres of land in the county of Sullivan, as collateral security to the original mortgage, the second mortgage being guarantied in its collection to the extent of $500 by Penoyer. The accrued interest and the costs of the foreclosure suit were thereupon paid, the action was discontinued, the default waived, and the bond and mortgage were reinstated. The interest was thereafter paid as it became due, until the 20th day of February, 1892, when the principal sum secured by the mortgage became due. In the meantime one Angelina R. Ketchum had purchased the premises covered by the mortgage, subject to the mortgage debt; and the

evidence tends to show that in 1893 Mrs. Parker demanded payment of her mortgage through her attorney, Mr. Greenfield, in consequence of which nego- tiations were entered into between that gentleman and Mr. Ketchum, the hus- band of the owner of the premises, with a view to extending the time of pay- ment of the mortgage, the result of which was that Ketchum and his wife obligated themselves, by a separate instrument under their hands and seals, to pay the mortgage according to the terms thereof, with interest thereon, and, in consideration of their doing so, the time of payment of the bond and mort- gage was extended for a period of three years. Subsequently, Sarah C. Parker departed this life; and on the 6th day of December, 1894, the bond and mort- gage in question were assigned by her administrators to the plaintiff in this action. Thereafter, and on the 3d day of September, 1895, another assign- ment of the same bond and mortgage, which also included the contract of guar- anty, was executed and delivered to this plaintiff, who brings this action against the defendants to recover upon the last-named instrument.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and McLENNAN, JJ.

William Nottingham, for appellants.
H. C. Sholes, for respondent.

ADAMS, J. The defense to this action was founded upon two allegations, namely, a want of consideration for the contract of guar- anty, and the discharge of the parties obligated thereby by reason of an extension of the time of payment of the principal debt. Upon the trial the plaintiff made the usual formal proofs, and rested her case. The defendants thereupon gave evidence which tended to prove that they received no consideration whatever for executing the contract of guaranty, and that subsequent to its execution the terms of the contract to which the guaranty applied had been altered without their knowledge or consent, at the times and in the manner specified in the foregoing statement of facts. No oral proof what- ever was offered by the plaintiff to meet this evidence, and the court was thereupon requested to direct a verdict in favor of the defend- ants. This request was refused, and the jury were instructed by the learned trial justice that there were certain implications and inferences in the case which they had a right to consider in deter- mining both questions of fact, which he thereupon proceeded to sub- mit to them, and the exception which was taken to this ruling of the trial court presents the real question in the case.

The seal which was affixed to the contract of guaranty was un- doubtedly presumptive evidence of a consideration (Best v. Thiel, 79 N. Y. 15); and in view of the fact that Charles A. Parker, one of the parties to that contract, and the one to whom the consider- ation, if any, probably passed, was, in consequence of his absence from the state, neither served with process nor sworn as a witness, it was probably competent for the jury to say whether that pre- sumption had been overcome by the oral proof bearing upon that subject. When, however, we come to consider the question relat- ing to the change in the terms of the original contract, we fail to discover any evidence which tends in the slightest degree to con- tradict that given by the witnesses Chester L. and Angelina R. Ketchum, who testified in the most unqualified manner that in March or April, 1893, the time of payment of the mortgage debt to

secure which the guaranty in question was given was extended for a period of three years, upon condition that they would personally obligate themselves to pay the same, which they did, by joining in the bond to that effect, bearing date April 2, 1893. In this connection, however, it will be proper to consider the argument advanced by the learned counsel for the respondent in regard to the evidence to which we have just adverted; for, while conceding his inability to meet the same with oral proof, he nevertheless insists that there was sufficient evidence in the case to raise an issue and to support the verdict rendered by the jury thereon. To sustain this contention, he first calls attention to the fact that the condition of the Ketchum bond is that the obligors shall pay the Parker mortgage "according to the terms thereof"; and it is argued that this means simply that the bond was a personal undertaking on the part of the Ketchums to pay the mortgage debt with interest when due, and that consequently the instrument itself was contradictory of the oral testimony of the parties who executed it. But, in advancing this theory, the learned counsel overlooks the fact that the mortgage fell due February 20, 1892, or more than a year prior to the execution of the Ketchum bond, in consequence of which it is impossible that the language quoted from the latter instrument should receive the construction which he claims for it.

Again, it is urged that the defendants, by omitting to call Mr. Greenfield as a witness in their behalf, have permitted the jury to infer that his evidence, had he been sworn, would have been prejudicial to their interests. This contention does not impress us favorably. Mr. Greenfield was the attorney and agent of the plaintiff's assignor, through whom, it is claimed, the agreement to extend the time of payment was entered into. There is nothing in the case, so far as we can discover, to indicate that he is in any wise hostile to the plaintiff. He lived but a short distance from the city of Rome, where this case was tried, and it was reasonable to suppose that he would have contradicted Mr. and Mrs. Ketchum had their evidence been untrue; and, consequently, we think that the plaintiff, and not the defendants, must suffer from whatever inference is to be drawn by reason of his absence at the trial. But it is said that the evidence of the Ketchums, even if true, proves nothing, for the reason that Greenfield had no authority from his client to extend the time of payment of her mortgage. We think, however, that, for obvious reasons, this position cannot be successfully maintained. In the first place, it appears that Mr. Greenfield, as attorney of the mortgagee, was intrusted with the duty of making some arrangement with the owner of the equity of redemption whereby the mortgage upon her premises might be paid or secured. If, therefore, he deemed it necessary, in order to accomplish the object sought, to grant an extension of the time of payment, his authority so to do would probably have been ample; but it is to be remembered that both Mr. and Mrs. Ketchum testify that Mr. Greenfield wrote them that Mrs. Parker had consented to the proposed arrangement, provided they would execute the bond which he inclosed with his letter; and this, if true, would indicate that he was acting under ex-

press authority. His action, however, whether authorized or unauthorized, was subsequently ratified by his principal; for it is a conceded fact in the case that she accepted the Ketchum bond, and thereafter received the interest upon her mortgage, which was thereafter regularly paid when due, until and including February, 1895, when Mrs. Ketchum removed from the premises.

Assuming, then, as we think we are justified in doing, that the evidence of Mr. and Mrs. Ketchum stands without material contradiction, it follows that a valid extension of the time of payment of the principal debt by the plaintiff's assignor was clearly established; for if the agreement was founded upon a valuable consideration, as it doubtless was, it was not essential that it should have been reduced to writing. Kane v. Cortesy, 100 N. Y. 132, 2 N. E. 874; Fish v. Hayward, 28 Hun, 456. It being likewise established, as it is beyond all contradiction, that the defendants' relation to the principal obligation was that of sureties merely, and that they were in no sense parties to, or even cognizant of, the agreement entered into between Mrs. Parker and Mr. and Mrs. Ketchum, it would seem that, within the most familiar principles, there could be no question but that their liability under their contract of guaranty had been terminated by the action of the plaintiff's assignor. Page v. Krekey, 137 N. Y. 307, 33 N. E. 311; Shipman v. Kelley, 9 App. Div. 316, 41 N. Y. Supp. 328; Livingston v. Moore, 15 App. Div. 15, 44 N. Y. Supp. 125. But it is insisted that the doctrine of these cases has no application, by reason of the fact that the agreement to extend the time of payment was not made with the principal debtor. It is true that Mrs. Ketchum was not a party to the original bond and mortgage, and that she did not assume their payment when she purchased the premises covered by the mortgage. While, therefore, she was under no personal obligation to pay the same, she did purchase subject to the lien of the mortgage; and, as the land upon which it was a lien was the primary fund for the payment of the mortgage debt, she thereby, to a certain extent, occupied the relation of principal debtor; and, so far as the rights of these defendants are concerned, any agreement entered into between her and the mortgagee would have the same effect as though in her purchase she had actually assumed payment of the mortgage. Flower v. Lance, 59 N. Y. 603; Murray v. Marshall, 94 N. Y. 611; Paine v. Jones, 14 Hun, 577.

These views lead to the conclusion that the defendants' second defense was so clearly established as to leave no issue for the consideration of the jury, and that the learned trial court was consequently in error when he denied the request of counsel to direct a verdict in favor of the defendants. For this reason we deem it unnecessary to express any opinion as to the effect of the settlement and agreement, which it is claimed was entered into in April. 1890.

Judgment and order reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur, except WARD, J., not voting.