### GERRY v. SIEBRECHT et al.

(Supreme Court, Appellate Term. June 23, 1904.)

1. LANDLORD AND TENANT—LEASE—CONSTRUCTION.

Premises leased consisted of a store, basement, and conservatory, to be used for selling flowers, and were part of the lessor's building; and the lease recited that the building was in process of construction, and intended to be of the general character shown in certain plans, and provided that, in case the premises should not be ready for occupancy at the beginning of the term, possession should be delivered as soon as completed, and that rent should be computed only from the time the premises should be ready for occupancy. *Held*, that the phrase "ready for occupancy" did not mean fitted by the lessor with fixtures rendering it ready for the lessee's business.

2. SAME—PAROL EVIDENCE—ADMISSIBILITY.

Parol evidence of conversations prior to and contemporaneous with a written lease, to show that the phrase "ready for occupancy" meant fitted by the lessor with fixtures suitable for the lessee's business, was inadmissible, since the lease presumably expressed the whole agreement.

3. SAME—ACTION FOR RENT—PAROL EVIDENCE.

Where, in an action for rent, the issue was the meaning of a clause of the lease, conversations had by the lessee with a person not shown to

have been the general agent of the lessor, or authorized to contract for him, were inadmissible on behalf of defendant.

4. PAYMENT—PROTEST.
　　A mere protest accompanying a payment does not render it not a voluntary payment.

5. LANDLORD AND TENANT—ACTION FOR RENT—COUNTERCLAIM—TORT.
　　In an action on a lease for rent, a counterclaim founded on a tort is not maintainable.

Appeal from City Court of New York.

Action by Elbridge T. Gerry against Henry A. Siebrecht and another. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

See 84 N. Y. Supp. 250.

Argued before FREEDMAN, P. J., and MacLEAN and SCOTT, JJ.

John M. Gardner, for appellants.
Harris & Towne, for respondent.

SCOTT, J. The written lease between the parties provided as follows:

"In case the premises shall not be ready for occupancy at the beginning of the term hereby granted, possession of the same shall be delivered to the lessees, as soon as completed and ready, and rent shall be computed only from the time the premises are ready for occupancy."

The defendants' contention appears to be that the words "ready for occupancy" meant ready for use for the conduct of the defendants' business as florists. This contention is not tenable. The premises rented consisted of a store, basement, and conservatory in a building known as the "Windsor Arcade," and were but a part of the building. The premises were rented to be used only for the sale of flowers, for which purpose, as may be gathered from the evidence, it was desirable to put in certain special fixtures and appliances; and the lease permitted the lessees, with the written consent of the lessor, to make alterations. It appears in evidence, and is not contradicted, that the lessees did cause certain fixtures and appliances to be erected. There is absolutely nothing in the lease requiring the owner and lessor to put in any such fixtures. The meaning of the words "ready for occupancy" is made perfectly clear by the context in the lease. It was recited that the building, at the time the lease was made, was in process of construction, and intended to be of the general character shown in certain plans. It was then provided that, if the building should be completed and ready for occupancy prior to the beginning of the term (August 1st), the lessees might take possession and hold the premises under the terms of the lease without further rent, which was to commence at the beginning of the term granted. It is undisputed that the building was completed, except as to the special appliances required for defendants' business, before August 1st, and that about a month prior thereto the keys of the demised premises had been delivered to the lessees. It seems to be quite clear that the words "ready for occupancy" must be construed to mean ready to be taken possession of by the tenants, whether for the purpose of

preparing them for the pursuit of their particular business, or for the purpose of carrying on that business. The answer alleges that the plaintiff lessor undertook and agreed to permit defendants to fix up and improve the premises in a manner suitable to their business in certain particulars, thus conceding that there was certain work to be done by defendants before they would be ready to begin business. Clearly, unless there was some special agreement to the contrary, it is to be presumed that the parties intended that these alterations should be done while the tenants were in possession under their lease. Unless, therefore, some special agreement could be shown, it was quite immaterial when these alterations were completed, and the questions intended to fix that date were properly excluded. No such agreement is to be found within the lines of the lease. All the questions respecting conversations prior to and contemporaneously with the execution of the lease were properly excluded for two reasons: First, because the lease must be presumed to have expressed the whole agreement between the parties up to the time it was made; and, secondly, because it does not appear that the persons with whom the conversations were had were the general agents of the owner, or authorized to contract for him. The counterclaim for the rent already paid has no basis to stand upon. It is not shown, or even alleged, that it was paid under circumstances amounting to legal duress, and the allegation that it was paid under protest means nothing. A mere protest accompanying a payment does not change its character. It remains, nevertheless, a voluntary payment, and concludes the parties. Flower v. Lance, 59 N. Y. 603.

The counterclaim for injury to plants appears to rest in tort. The allegation is that the damage to the plants was caused by the "wrongful act and neglect" of plaintiff. Such a counterclaim may not be interposed in an action upon a lease for rent, and, if it could, the only evidence offered was that ice fell upon the conservatory, without the slightest evidence why it fell, or that the plaintiff was in any way responsible for the fall.

Upon the whole case, the defendants failed to show that they had a valid defense to the plaintiff's cause of action, or that they had a meritorious and legal counterclaim thereto. · The exceptions were numerous, but none of them show reversible error.

Judgment affirmed, with costs. All concur.