1815.

SHOTWELL
v.
MURRAY.

———◦⁑◦———

*Sept.* 27th.

## SHOTWELL *against* MURRAY.

A sale under a second, or junior judgment, is not, of itself, a waiver of the plaintiff's rights under a first or elder judgment.

Every person is bound to know the law; and where there is no mistake as to the fact, but only as to the legal consequence, and that on a collateral point, there can be no ground for relief, either by vacating a sale, or by a perpetual injunction against the exercise of the defendant's rights.

A. having two judgments, of different dates, against G., issued execution on the second, under which the land of the debtor was advertised for sale by the sheriff. A. was present at the sale, and gave directions, but was entirely *silent* about the first judgment, and as to any intention, afterwards to enforce it. B. having some claim to the land, in order to protect his title, became the purchaser at the sheriff's sale, and received a deed, though he previously knew of the existence of both judgments.

B. filed a bill for a perpetual injunction against A.'s proceeding under the first judgment, on the ground of mistake, or fraud; but the bill was dismissed, with costs.

ON the 8th *December,* 1807, *Munro* obtained a judgment in the supreme court against *Green,* which became a lien on

land of *Green*, in the town of *Schuyler*, in *Herkimer* county, being lot No. 50., in *Cosby's Manor*. In *August*, 1811, a *test. fi. fa.* was issued on the judgment, and the lot, with other lands, was conveyed, by the sheriff, to the plaintiff, as the highest bidder, on the 12th of *December*, 1812. The defendant, afterwards, purchased two judgments against *Green*, which were duly assigned to him, one of them docketed the 24th of *April*, 1799, and the other, on the 20th of *December*, 1803; and, in 1813, the defendant issued an execution on the second judgment, and directed the sheriff to sell the lot in question; and the same being exposed to sale by the sheriff, the plaintiff, in order to protect his title, became the purchaser at the second sale, for 2,700 dollars, and received a deed from the sheriff.

The bill further stated, that the defendant attended at the last sale, and bid, and gave directions to the sheriff, but did not then, or at any prior time, make known that he should have any further or other lien on the land after the sale, or that he should again proceed to sell the same under the other judgment; nor did he in any manner declare or intimate, that such sale was made subject to the prior judgment of *April*, 1799, although the defendant, on that occasion, and at other times, admitted that he was the owner of both judgments. The plaintiff alleged, that he purchased the land at the second sale, in full confidence that the premises would, thereby, be exonerated from all further lien, by means of the judgments held by the defendant. But the defendant, however, afterwards, issued an execution on the other judgment, and was proceeding to advertise the land again for sale. The bill prayed for an injunction to stay all proceedings on the second judgment and execution of the defendant; and that the same might be made perpetual; and for general relief.

The defendant, in his answer, admitted that he was present at the sale, and bid, and gave directions to the sheriff;

1825.

SHOTWELL
v.
MURRAY.

1815.

SHOTWELL
v.
MURRAY.

and that he did not make known that he should have any further or other lien on the land ; or that he should again proceed to sell it under the prior judgment ; and that he did not declare, or intimate, that the sale was made subject to the *lien* of the prior judgment ; but he insisted, that he did not thereby relinquish his lien on the prior judgment ; and averred, that the plaintiff *knew*, at the time, that he was the owner of both judgments, and had applied to him to purchase them. He, also, admitted, that he had issued an execution on the other judgment, and had directed the sheriff to levy again on the same lot, and intended to proceed in the sale.

It was proved that the plaintiff had applied to purchase the judgment of *April*, 1799, before the same was assigned to the defendant.

*Riggs* and *Slosson*, for the plaintiff. They cited *Livingston* v. *Byrne*, 11 *Johns. Rep.* 555. *Hewson* v. *Deygeri*, 8 *Johns. Rep.* 333.

*Wells*, for the defendant.

THE CHANCELLOR. The question is, whether the defendant lost the benefit of the lien of the elder judgment by selling the land under a younger judgment, without disclosing, at the time of sale, that he held, and intended to hold, the former judgment as a subsisting and valid encumbrance. The defendant admits that he attended the sale, and gave directions concerning it, and was himself a bidder ; and that he was silent on the subject of the prior judgment. If the lien of that judgment, on the land so sold, be lost or impaired, it must be because his silence amounted to fraud in suffering the plaintiff to purchase under some erroneous impression, which it was his duty to remove ; for it will hardly be contended, that if a creditor has two judgments upon the same land, the mere fact of his selling under the last, is, *per se*, a waiver of

his rights under the first judgment.  But here was no fraud
in the case.  The plaintiff admits, in his bill, his knowledge,
at the time, of the existence of the former judgment, and of
its assignment to the defendant.  The fact of his knowledge
is also proved.  The allegation of the plaintiff is, that he
purchased, not in ignorance of the prior judgment, but in con-
fidence that he should be enabled to hold the land free, and
discharged from that judgment.  Here was, then, no mistake
in point of fact.  According to the plaintiff's own showing,
he was only under a mistake in point of law ; and that mistake
not being produced by any fraud in the defendant, is not
sufficient, of itself, to affect the former lien, or the validity of
the sale.  The defendant (as we are at liberty to presume)
might have previously communicated to the plaintiff all the
requisite knowledge, or he might have been informed by
others of the plaintiff's knowledge, and have deemed it use-
less or impertinent, to be reminding him of what he already
knew.  The case is by no means analogous to that of *Living-
ston* v. *Byrne*, (11 *Johns. Rep.* 555.,) to which the counsel
referred ; for there the party had, by public notice, pro-
mised a release of his rights to the purchaser ; and the set-
ting up, afterwards, a prior and secret deed of trust, was in-
consistent with the notice, and a surprise upon the purchaser.
It is a decisive fact, in this case, that when the plaintiff made
the purchase, he *knew* that such a prior judgment existed,
and it was *his* business to make further inquiry on the sub-
ject of that judgment, if such inquiry should become material.
It was not incumbent on the defendant to tell the plaintiff
that the former judgment would continue to bind the land,
notwithstanding the purchase, for that was a legal conse-
quence with which the plaintiff must be presumed to have
been acquainted.  Possibly each party was speculating at the
time, the one in buying, and the other in selling, on the sup-
posed ignorance of the other, as to the operation of the sale
on the former judgment.  In a moral point of view, the duty
of disclosure of each other's opinion was mutual.  The defend-

ant has done nothing that amounts, in judgment of law, to a waiver of his lien, for here was no concealment of a fact of which the other party was ignorant; and a person cannot be permitted to disavow or avoid the operation of an agreement entered into with a full knowledge of the facts, on the ground of ignorance of the legal consequences which flow from those facts. I assume this as a settled principle of law and sound policy. The effect of mistake of the law, in different cases, and under various and special circumstances, has been often and deeply discussed by the writers on the civil law; and the *text* of that law, with *Cujas* and *Heineccius*, is to be found on one side, and *Vinnius*, *Domat*, *D'Aguesseau*, and *Pothier*, on the other, in respect to the question, whether money paid under a mistake of the law, and with knowledge of the facts, can be recovered back. But this case is even clear of that question. Here is a purchase fairly made, and, admitting all that is alleged, made under a mistake of the law only as to a collateral point which did not go to the sole consideration of the purchase; and the purchaser is seeking, under that pretence, not indeed to vacate the sale, but to devest the defendant of his rights. In such a case, the general doctrine which we find established must prevail, that every man is to be charged with a knowledge of the law. (*Doctor and Student*, 79. 151. 152. *Bilbie* v. *Lumley*, 2 *East*, 469. *Stevens* v. *Lynch*, 12 *East*, 38. 1 *Fonb. Eq.* 106. n. *t.*) In *Mildmay's case*, (1 *Co.* 177.,) it was held, that ignorance of the law was no justification in an action of slander of title. It is a very dangerous plea, whether we apply it to the rules of civil conduct, or to duties of natural and moral obligation. In the *Lettres Provinciales* of *Pascal*, (*Lett.* 4.,) he refutes the lax morality of the *Jesuits*, by showing from *Aristotle*, to whom they had appealed, that though ignorance of the fact will render an action involuntary, yet that ignorance of the moral law is no admissible plea for breach of duty in matters that concern the moral conduct.

The binding nature of the purchase, in this case, subject to the prior lien, might be further strengthened, if it were necessary, from a consideration of the fact, that the plaintiff carried the contract of sale into effect by paying the purchase money, and receiving a deed, *after* he was informed, by the sheriff, that another execution under the first judgment was put into his hands.

I shall, accordingly, dismiss this bill, with costs.

Decree accordingly.