## Case No. 17,224.

### WASHINGTON v. BARBER.

[5 Cranch, C. C. 157.] [1]

Circuit Court, District of Columbia. March Term, 1837.

MUNICIPAL CORPORATIONS — LIVERY STABLE LICENSE—VOLUNTARY PAYMENTS.

1. The corporation of Washington has no right to require a keeper of a livery stable to take, and pay for, a license to keep the same; but if it be taken and paid for, and enjoyed, the money paid for it cannot be recovered back.

2. Semble, that money paid under ignorance of the law cannot be recovered back.

This was an appeal from the judgment of the justice of the peace, by which the appellee recovered of the corporation $40, which the appellee had paid for two years' license to keep a livery stable, issued in conformity with the provisions of the by-law of the 28th October, 1831.

Mr. Dandridge, for the appellee, cited Moses v. Macferlan. 2 Burrows, 1005; Bize v. Dickason, 1 Term R. 285; Smith v. Bromley, 2 Doug. 696, note: Hunt v. Rousmanier, 8 Wheat. [21 U. S.] 174, 211; Morris v. Tarin, 1 Dall. [1 U. S.] 147, 148; Lowry v. Bourdieu, 2 Doug. 471; Farmer v. Arundel, 2 W. Bl. 824, 825; Bilbie v. Lumley, 2 East, 469; Union Bank v. Bank of United States, 3 Mass. 74; Pearson v. Lord, 6 Mass. 81; Hunt v. Rousmanier, 1 Pet. [26 U. S.] 15; Garland v. Salem Bank, 9 Mass. 408; Browning v. Morris, Cowp. 790; Haven v. Foster, 9 Pick. 112; Lammott v. Bowly, 6 Har. & J. 524.

Mr. Bradley, contra, cited Bilbie v. Lumley, 2 East, 469; Knibbs v. Hall, 1 Esp. 84; Taylor v. Hare, 1 Bos. & P. (N. R.) 260; Brown v. M'Kinally, 1 Esp. 279; Marriott v. Hampton, 2 Esp. 546; Potter v. Benniss, 1 Johns. 515; Hall v. Shultz, 4 Johns. 240; Lyon v. Richmond, 2 Johns. Ch. 51, 60; Shotwell v. Murray, 1 Johns. Ch. 512.

CRANCH, Chief Judge. This is an appeal from the judgment of a justice of the peace, upon a warrant to recover back $40 paid by Barber to the corporation of Washington for license to keep a livery stable for two years, at $20 a year, under the by-law of the said corporation of the 28th October, 1831, upon the ground that the charter of the city did not authorize the corporation to require a license for keeping a livery stable: and that the by-law was void, and the money for the license wrongfully demanded and received by the corporation. The judgment of the justice was for the appellee. It is now admitted that the by-law was void, the corporation having mistaken their powers in that respect; but it is contended that the appellee cannot recover back the money paid: 1. Because the appellee paid it under a mutual mistake of the law only, and not of any fact; and a mistake of the law is no ground of recovery. 2. Because the appellee had the benefit of the license for the two years, which in his own judgment was worth the money, or he would not have paid it; and therefore he has no right, ex æquo et bono, to recover it back. 3. Because he paid it voluntarily when he had a good defence at law.

Being of the opinion that the second ground of defence is conclusive against the appellee, I do not think it necessary to decide upon the first or third. The case of Taylor v. Hare, 1 Bos. & P. (N. R.) 260, was very similar to the present. A patentee, believing himself to be the inventor, had permitted the plaintiff to use the inventions, for several years, at £100 a year, which the plaintiff paid; but, discovering that the defendant was not the inventor, he refused to pay any longer, and brought his action to recover back the money he had paid. Sir James Mansfield, C. J., said: "It is not pretended that any action, like the present, has ever been known. In this case, two persons, equally innocent, made a bargain about the use of a patent, the defendant supposing himself to be in possession of a valuable patent right, and the plaintiff supposing the same thing. Under these circumstances, the latter agrees to pay the former for the use of the invention; and he has the use of it. Non constat, what advantage he made of it; for anything that appears, he may have made considerable profit." "How then can we say that the plaintiff ought to recover back all that he has paid? I think there must be judgment for the defendant." Heath, J.: "There never has been a case, and there never will be, in which a plaintiff, having received benefit from a thing which has afterwards been recovered from him, has been allowed to maintain an action for the consideration originally paid. We cannot take an account here of the profits. It might as well be said that if a man lease land, and the lessee pay rent, and afterwards be evicted, that he shall recover back the rent, though he has taken the fruits of the land." Roake. J.: "I am of the same opinion." Chambre, J.: "The plaintiff has had the enjoyment of what he stipulated for, and in this action the court ought not to interfere, unless there be something ex æquo et bono which shows that the defendant ought to refund. Here both parties have been mistaken; the defendant has thrown away his money in obtaining a patent for his own invention; not so the plaintiff, for he has had the use of another person's invention for his money." "I am therefore of the opinion that the judgment of the nonsuit should be entered." If it be said that in this case of Taylor v. Hare the mistake was of the facts, and not of the law, it is so much the stronger; for then the plaintiff might have recovered, but for the enjoyment which he had of the thing. That enjoyment, then, is of itself a bar to the plaintiff's recovery.

So, in the present case, the appellee has had

[1] [Reported by Hon. William Cranch, Chief Judge.]

the benefit of his license for two years, and, no doubt, made a profit equivalent to the money which he paid for it. The license was granted, and the money paid, under a mutual mistake of their legal rights, and I think the appellant may keep the money with a good conscience. The question whether money paid under a mistake of the law only, but with a knowledge or the means of knowledge of all the facts, can be recovered back, may not yet, perhaps, be fully settled; but the prevailing opinion in modern cases seems to be against it.

Thus Chitty (on Bills, 236) says: "It is now clearly established that even a mere promise to pay, made after notice of the laches of the holder, would be binding; though the party making it misapprehended the law." In Lowry v. Bourdieu, 2 Doug. 471, Buller, J., said: "There was no fraud on the part of the underwriters, nor any mistake in matter of fact. If the law was mistaken, the rule applies, 'Ignorantia juris non excusat.'" In Bilbie v. Lumley, 2 East, 470, Lord Ellenborough asked the plaintiff's counsel "whether he could state any case where, if a party paid money to another voluntarily, with a full knowledge of all the facts of the case, he could recover it back again on account of his ignorance of the law?" No answer being given, he continued: "The case of Chatfield v. Paxton is the only one I ever heard of, where Lord Kenyon, at nisi prius, intimated something of that sort. But when it was, afterwards, brought before this court, on a motion for a new trial, there were some other circumstances of fact relied upon; and it was so doubtful, at last, on what precise ground the case turned, that it was not reported. Every man must be taken to be cognizant of the law; otherwise there is no saying to what extent the excuse of ignorance might not be carried. It would be urged in almost every case." In Stephens v. Lynch, 12 East, 38, the court considered the cases of Chatfield v. Paxton, B. R. Michaelmas, 39, c. 3, and Bize v. Dickason, as having proceeded on a mistake of the facts; "but here," says the court, "the defendant made the promise with the full knowledge of the circumstances, three months after the bill had been dishonored, and could not now defend himself upon the ground of his ignorance of the law when he made the promise." In Brisbane v. Davis, 5 Taunt. 151, Gibbs, J., said: "We must take this payment to have been made under a demand of right; and I think that when a man demands money of another as a matter of right, and the other with the full knowledge of the facts upon which the demand is founded, has paid a sum of money, he cannot recover back the sum he has so voluntarily paid. If we were to hold otherwise, I think many inconveniences may arise. There are many doubtful questions of law. When they arise the defendant has an option either to litigate the question, or to submit to the demand and pay the money. I think that, by submitting to the demand, he that pays the money gives it to the person to whom he pays it, and thus closes the transaction between them. He who receives it has a right to consider it his without dispute. He spends it, in confidence that it is his; and it would be most mischievous and unjust if he who has acquiesced in the right, by such voluntary payment, should be at liberty at any time within the statute of limitations to rip up the matter and recover back the money." "I am aware that cases were cited at the bar in which were dicta that sums paid under a mistake of the law might be recovered back, though paid with the knowledge of the facts; but there are none of the cases which may not be supported on much sounder ground." Mr. Justice Gibbs then reviews the cases of Farmer v. Arundel, 2 W. Bl. 825; Lowry v. Bourdieu, 2 Doug. 471; Bize v. Dickason, 1 Term R. 285; Chatfield v. Paxton, B. R. Michaelmas, 39, c. 3, mentioned in Bilbie v. Lumley, 2 East. 471; Bilbie v. Lumley, 2 East, 469; and Herbert v. Champion, 1 Camp. 134; and says, in conclusion, "I think, on principle, that money which is paid to a man who claims it as his right, with a knowledge of all the facts, cannot be recovered back." Heath, J., and Mansfield, C. J., concurred in opinion that plaintiff could not recover. Chambre, J., dissented.

In Haven v. Foster, 9 Pick. 128, Morton, J., in delivering the opinion of the court, said: "In all civil and criminal proceedings, every man is presumed to know the law of the land; and whenever it is a man's duty to acquaint himself with facts he shall be presumed to know them." In Hunt v. Rousmanier, 1 Pet. [26 U. S.] 15, Mr. Justice Washington, in delivering the opinion of the court, says, "The question then is, ought the court to grant the relief that is asked for upon the ground of mistake arising from any ignorance of the law?" "We hold the general rule to be, that a mistake of this character is not a ground of reforming a deed founded on such a mistake; and, whatever exceptions there may be to this rule, they are not only few in number, but they may be found to have something peculiar in their characters." Again, in page 16, he says, "The cases in which the general rule had been adhered to are, many of them, of a character which strongly tests the principle upon which the rule itself is founded. Two or three only need be referred to. If the obligee in a joint bond by two or more, agree with one of the obligors to relieve him of his obligation, and does accordingly execute a release, by which all the obligors are discharged at law, equity will not afford relief against this legal consequence, although the release was given under a manifest misapprehension of the legal effect of it in relation to the other obligors. So, in the case of Worrall v. Jacob, 3 Mer. 271, where a person having a power of appointment and revocation, and, under a mistaken supposition that a deed might be altered or revoked, although no power of revocation had been reserved, executed the power of appointment without reserving a power of revo-

cation, the court refused to relieve against the mistake. The case of Lord Irnham v. Child, 1 Brown, Ch. 92, is a very strong one in support of the general rule, and closely resembles the present in most of the material circumstances attending it. The object of the suit was to set up a clause containing a power of redemption, in a deed granting an annuity, which, it was said, had been agreed upon by the parties, but which, after deliberation, was excluded by consent, from a mistaken opinion that it would render the contract usurious. The court, notwithstanding the omission, manifestly proceeding upon a misapprehension of the parties as to the law, refused to relieve by establishing the rejected clause."

It is evident, that the court, in this case of Hunt v. Rousmanier, was embarrassed by its opinion, given when the case was before them, in 1823 (8 Wheat. [21 U. S.] 174), when Marshall, C. J., in delivering the opinion of the court, said, in page 216: "We find no case which we think precisely in point; and are unwilling, where the effect of the instrument is acknowledged to have been entirely misunderstood by both parties, to say that a court of equity is incapable of affording relief;" and therefore Mr. Justice Washington was obliged to say: "It is not the intention of the court, in the case now under consideration, to lay it down that there may not be cases in which a court of equity will relieve against a plain mistake, arising from ignorance of law. But we mean to say that where the parties, upon deliberation and advice, reject one species of security, and agree to select another, under a misapprehension of the law as to the nature of the security so selected, a court of equity will not, on the ground of such misapprehension, and the insufficiency of such security, in consequence of a subsequent event, not foreseen perhaps, or thought of, direct a new security, of a different character, to be given, or decree that to be done which the parties supposed would be effected by the instrument which was finally agreed upon." "The agreement has been fully executed, and the only complaint is that the agreement itself was founded upon a misapprehension of the law, and the prayer is to be relieved from the consequence of such mistake." The decree dismissing the bill was affirmed with costs.

In Shotwell v. Murray, 1 Johns. Ch. 516, Chancellor Kent says again: "Every man is to be charged, at his peril, with a knowledge of the law. There is no other principle that is safe or practicable in the common intercourse of mankind."

If these cases do not establish the principle that a mistake of law cannot be rectified, either at law or in equity, they, at least, satisfy my mind upon the subject; and I must say that upon this ground, also, the appellee is not entitled to recover. I am therefore of the opinion that the judgment ought to be reversed, with costs.

The other judges concurred. Judgment reversed, with costs.