THE NEWBURGH SAVINGS BANK, Appellant, v. THE TOWN OF WOODBURY, Defendant, and JOHN G. EARL et al., Respondents, Impleaded with Others.

MISTAKE OF LAW — DRAFTED MEN NOT LIABLE FOR MONEYS RECEIVED UNDER THE VOID DRAFTED MEN'S ACT (L. 1892, CH. 664).  Money loaned to a town upon the security of bonds issued under chapter 664 of the Laws of 1892 for the relief of certain persons drafted into the military service of the United States under the act of Congress passed March 3, 1863, known as the Conscription Act, and paid over by the county treasurer to such drafted men, cannot be recovered from them by the bondholders, after the statute has been declared void by the courts of this state, where no fraud is alleged and no question of a trust in favor of or against any one is involved, since the money was received by the drafted men under a mutual mistake of law and under a claim of right, and they are under no liability to restore it to the bondholders.

*Newburgh Sav. Bank v. Town of Woodbury*, 64 App. Div. 305, affirmed.

(Submitted December 5, 1902; decided January 6, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered

October 14, 1901, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles F. Brown* for appellant. The rule applied by the Appellate Division that money paid under a mistake of law is " beyond the power of recall," is not applicable to the facts of this case. (2 Pom. Eq. Juris. § 842 ; Tiedeman's Eq. Juris. §§ 188, 189 ; *Moulton* v. *Bennett,* 18 Wend. 586 ; *Matter of Brown,* L. R. [32 Ch. Div.] 597 ; *Matter of Opera,* L. R. [2 Ch. Div. 1891] 154 ; *Ex parte James,* L. R. [9 Ch. App.] 609 ; *Havens* v. *Foster,* 9 Pick. 112 ; *Bank of Chillicothe* v. *Dodge,* 8 Barb. 233 ; *Vinal* v. *Con. Co.,* 53 Hun, 247 ; *Pitcher* v. *Hennessey,* 48 N. Y. 415 ; *Macknet* v. *Macknet,* 29 N. J. Eq. 54 ; *Cooper* v. *Phibbs,* L. R. [2 H. L.] 170.) Assuming that the mistake made by the plaintiff and the supervisor was one of law, the plaintiff is entitled to recover. (Story's Eq. Juris. 121 ; Cooley's Const. Lim. 188.) The mistake made by the supervisor and the officers of the bank was not one of law at all, but one of fact. (Pom. Eq. Juris. § 849 ; Tiedeman's Eq. Juris. § 189.)

*J. W. Gott* for respondents. The mistake in payment was purely and only a mistake of law. (*Doll* v. *Earle,* 65 Barb. 301.) The payments by the county treasurer to the defendants Earl and Owens were voluntary and made on a claim of right and under no misapprehension or mistake of fact, and cannot be recovered, and if there was a mistake, it was a mistake of law. (*Shotwell* v. *Murray,* 1 Johns. Ch. 516 ; *Lyons* v. *Richmond,* 2 Johns. Ch. 60 ; *Jacobs* v. *Morange,* 47 N. Y. 60 ; *Clark* v. *Dutcher,* 9 Cow. 675 ; *Storrs* v. *Baker,* 6 Johns. Ch. 167 ; *Mowatt* v. *Wright,* 1 Wend. 355 ; *Silliman* v. *Wing,* 7 Hill, 159 ; *Bd. of Suprs.* v. *Briggs,* 2 Den. 26 ; *Wyman* v. *Farnsworth,* 3 Barb. 371 ; *Holdredge* v. *Webb,* 64 Barb. 10.) There was no privity between plaintiff and the

defendants Earl, Owens and Stokem to sustain this action. (*City of Albany* v. *McNamara*, 117 N. Y. 172; *Bank* v. *Bd. of Suprs.*, 106 N. Y. 488; *Flynn* v. *Hurd*, 118 N. Y. 26.)

O'BRIEN, J.   On the first day of February, 1894, the plaintiff purchased from the supervisor of the town of Woodbury, one of the organized towns of Orange county, four bonds of one thousand dollars each, issued by the town, bearing date on that day and payable respectively in one, two, three and four years thereafter.   The bonds were authorized to be issued by the board of supervisors of the county, under chapter 664 of the Laws of 1892, for the relief of certain persons drafted into the military service of the United States under the act of Congress passed March 3, 1863, known as the Conscription Act.   The bonds on their face disclosed the authority under which they were issued and the purpose to which they were to be applied.   The statute under which they were issued was declared by this court to be void as in conflict with the State Constitution.   (*Bush* v. *Bd. Supervisors of Orange County*, 159 N. Y. 212.)   The plaintiff brought this action against the town, the county treasurer and three drafted men who had been paid money under the provisions of the act.   No relief was asked against the town, and it is only a nominal party.   The relief demanded against the county treasurer was that he account for and pay to the plaintiff such part of the money as remained in his hands as could be traced as the proceeds of the bonds paid by the plaintiff to the town; and the relief demanded against the drafted men was that they pay over to the plaintiff any moneys received by them which could be traced in like manner.   At the trial judgment was rendered in favor of the plaintiff against the county treasurer and the drafted men for certain sums or amounts that were found to represent the proceeds of the bonds or moneys paid to the town by the plaintiff upon the purchase of the bonds.   No judgment was rendered against the town.   The county treasurer took no appeal from the

judgment, and but two of the drafted men appealed. On their appeal the judgment rendered against them was reversed at the Appellate Division and a new trial granted, and from that judgment the plaintiff has appealed to this court.

The only question presented by the appeal is whether these two persons were liable to the plaintiff, and if so, the amount of the liability. The proceeds of the bonds were intermingled with other moneys in the treasury, one of the bonds was paid when due, and various questions of the right to interest and the methods of tracing the proceeds are involved in the inquiry concerning the amount of the liability. If these questions were material to the disposition of the case it is only fair to say that some of the objections presented and argued by the learned counsel for the defendants would be difficult to answer, but in the view that we are disposed to take with respect to the fundamental question involved, it will not be necessary to consider them. If the defendants are not liable at all, any errors committed in the statement of the account against them become wholly immaterial.

The learned court below has held that they are not liable, since the money received by them was under a mutual mistake of law and under a claim of right and, therefore, cannot be recovered from them by the plaintiff. That proposition presents the real and important question in the case. That the act under which the bonds were issued was void is admitted on all sides and at every stage of the argument. It should also be noted that the case contains no element of fraud and no question of a trust in favor of or against any one, and, hence, certain cases cited from this court, where one or both of these elements were present and made the basis of an action to compel the restoration of money, have no application. (*Am. Sugar Refining Co.* v. *Fancher*, 145 N. Y. 552; *Holmes* v. *Gilman*, 138 id. 369.) The original transaction was a loan of money by the plaintiff to the town upon the security of its bonds. There is no doubt that where a municipal corporation borrows money upon a void security it may be compelled to restore the money to the lender so long as the

money remains in the treasury or under the control of the corporation, but such cases do not involve the question of payment under a mistake of law. The right to restoration of money so received rests upon the principle that there was no consideration and that it would be unjust in the forum of conscience for the corporation to retain it. Many of the cases cited by the learned counsel for the plaintiff are cases of this character, where in the discussion the effect of a mistake of law is often referred to *arguendo* but was not really involved or made the basis of any recovery.

It must be conceded that in most text books on equity jurisprudence, and in some of the adjudged cases, *dicta* or argument of more or less force and authority may be found to the effect that in some cases equity will grant relief founded upon a mistake of law. In none of the authorities cited by the learned counsel for the plaintiff is the principle stated in clearer or broader language or more favorably for his contention than by Mr. Pomeroy in his work on Equity Jurisprudence. We may adopt all that he says with reference to the general rule and its qualifications and limitations, since the views of the learned author occupy a very prominent place in the printed argument submitted in support of the appeal :

" The doctrine is settled that, in general, a mistake of law, pure and simple, is not adequate ground for relief. Where a party with knowledge of all the material facts, and without any other special circumstances giving rise to an equity in his behalf, enters into a transaction affecting his interests, rights and liabilities, under an ignorance or error with respect to the rules of law controlling the case, courts will not in general relieve him from the consequences of his mistake. *    *    * While this general doctrine prevails in equity as well as at law, its operation is not universal; it is subject to modifications and limitations; equity *does* sometimes exercise its jurisdiction on the occasion of mistakes of law. If the mistake of law is not pure and simple, but is induced or accompanied by other special facts giving rise to an independent equity in

behalf of the mistaken person, such as inequitable conduct of
the other party, there can be no doubt that a court of equity
will interpose its aid.   Even when the mistake of law is pure
and simple, equity *may* interfere.   The difficulty is to ascer-
tain any general criterion which shall determine and include
all such cases."   (§ 842.)   And again: "Wherever a person
is ignorant or mistaken with respect to his own antecedent
and existing private legal rights, interests, estates, duties,
liabilities, or other relation, either of property or contract, or
personal status, and enters into some transaction, the legal
scope of which he correctly apprehends and understands, for
the purpose of affecting such assumed rights, interests or rela-
tions, or of carrying out such assumed duties or liabilities,
equity will grant its relief, defensive or affirmative, treating
the mistake as analogous to, if not identical with, a mistake
of fact."   (§ 849.)

These extracts from the learned author present in a con-
densed form the most favorable view in support of the appeal
that is sustained by any authority.   But the learned author
has qualified and modified much of what has been quoted
above in another part of his work, and this qualification has
a very material bearing on this case : "The general rule stated
in the paragraph before the last, concerning mistakes as to
one's own private legal rights and duties, is also subject to
another important limitation.   It is settled at law, and the
rule has been followed in equity, that money paid under a
mistake of law with respect to the liability to make payment,
or with full knowledge, or with means of obtaining knowledge
of all the circumstances, cannot be recovered back."   (§ 851.)
The discussion by the learned author of the question concern-
ing a mistake of law, when read as a whole, does not tend to
support the contention of the plaintiff in this case.   Without
referring to the numerous authorities cited from other juris-
dictions, or attempting to explain them, it is quite sufficient
to say that the rule in this state from the earliest times to
the present day has been consistent and uniform in favor of
the general rule that money paid under a mistake of law can-

not be recovered back. In the early case of *Shotwell* v. *Murray* (1 Johns. Ch. 512) Chancellor Kent stated the principle in the following terms : " A person cannot be permitted to disavow or avoid the operation of an agreement entered into with a full knowledge of the facts on the ground of ignorance of the legal consequences which flow from those facts. I assume that this is a settled principle of law and sound policy. · * * * Every man is to be charged with knowledge of the law." And subsequently in *Lyon* v. *Richmond* (2 Johns. Ch. 60) the learned chancellor said : " A subsequent decision of a higher court in a different case, giving a different exposition of a point of law from the one declared and known when a settlement between parties takes place, cannot have a retrospective effect and overturn such settlement. The courts do not undertake to relieve parties from their acts and deeds fairly done on a full knowledge of facts though under a mistake of law. Every man is to be charged at his peril with a knowledge of the law. There is no other principle which is safe and practicable in the common intercourse of mankind. And to permit a subsequent judicial decision in any one given case, on a point of law, to open or annul everything that has been done in other cases of the like kind for years before, under a different understanding of the law, would lead to the most mischievous consequences. Fortunately for the peace and happiness of society there is no such pernicious precedent to be found."

Perhaps the most striking and forcible illustration of this rule is to be found in the decision of this court in the case of *Doll* v. *Earle* (59 N. Y. 638). There the plaintiff paid off to the defendant in 1863 a mortgage on premises that the plaintiff had just purchased, and by an agreement between them $985.00, being the difference between gold coin and legal tender currency on the amount of the mortgage, was held to await the decree of the United States Supreme Court in the legal tender cases. When that court decided that the Legal Tender Act was unconstitutional and void as to contracts executed prior to its passage, of which this mortgage was one, the

mortgagor ordered the money paid to the mortgagee. After-wards a reargument was allowed in the United States Supreme Court, and the validity and constitutionality of the Legal Tender Act was declared. Thereupon the mortgagor sought the court's aid to recover the money. This court held that the payment had been voluntarily made on a claim of right under no mistake of fact and could not be recovered back, although by a subsequent decision of the United States Supreme Court (*Knox* v. *Lee,* 12 Wall. 457) it appeared that the payment was made under a mistake of law. That case in principal ought to control the decision in the case at bar. About the same time this court decided the case of *Flower* v. *Lance* (59 N. Y. 603). Those cases cover the law of this State on the question, and have been cited with approval and followed as authority to the present day. (*Flynn* v. *Heard,* 118 N. Y. 26; *Jacobs* v. *Morange,* 47 N. Y. 57; *People* v. *Stephens,* 71 N. Y. 559; *Weed* v. *Weed,* 94 N. Y. 243; *Cox* v. *Mayor, etc., of N. Y.,* 103 N. Y. 526; *First National Bank of Ballston Spa* v. *Bd. Supervisors Saratoga Co.,* 106 N. Y. 488; *Vanderbeck* v. *City of Rochester,* 122 N. Y. 289; *Redmond* v. *Mayor, etc., of New York,* 125 N. Y. 632.)

We think that the general rule that money paid under a mistake of law cannot be recovered back, which was asserted and applied in these cases, is applicable to the case at bar. The two drafted men who appealed from the judgment had no contract relations with the plaintiff; they owed to it no duty, express or implied. There is no privity between them and the plaintiff. The plaintiff did not pay to them any money at any time. What the plaintiff did was to loan money to a municipal corporation on void securities which the plaintiff could recover so long as it remained under the control of the borrower, but when the town in this case disbursed the money for the purpose for which it was raised, to various persons who claimed and received it as a right, the rule referred to will protect the defendants. The plaintiff advanced the money to the town on its bonds for the very purpose of enabling the town to discharge what was supposed to be its

obligation to the drafted men, and the latter received the money by virtue of the law as it then existed under a claim of right. All parties supposed at the time that the drafted men were entitled to the money and that it was their legal right to receive it. It now turns out that they were all mistaken, but it was a mistake of law and, therefore, the drafted men who received the money under the circumstances are not under liability to the plaintiff to restore what they have received.

It follows that the order appealed from should be affirmed and judgment absolute rendered against the plaintiff on the stipulation, with costs to the defendants who have appealed in all the courts.

PARKER, Ch. J., GRAY, VANN and CULLEN, JJ., concur; MARTIN and WERNER, JJ., absent.

Ordered accordingly.