Margaret M. Bowden, Trustee, etc., Plaintiff, *v.* Hearl
L. Owen et al., Defendants.

(Supreme Court, Saratoga Trial Term, March, 1918.)

Wills — trusts — executors and administrators — accounting — resid-
uary legatee — assignments.

Under two declarations of trust the estate of testatrix, all
personal, was held by a trustee and at her death the property
was to pass to the legatees named in her will, or, if she died
intestate, to her next of kin. She left a will, named one of
the defendants herein as executor and residuary legatee, her
only other bequest being to a religious corporation. She left
her surviving no husband, her nearest blood relatives being
three aunts and three cousins on the maternal side and several
cousins on the paternal side, all of whom were cited in the
proceeding for the probate of the will and when objections
were about to be filed by each group of collaterals an oral
contract and settlement was made between the two groups to
divide the two-thirds of the residuary estate, whereupon the
executor, for convenience, made and delivered an assignment
of one-third of the estate to each group of collaterals and the
will was admitted to probate. The settlement was made while
all parties honestly and in good faith believed that the aunts
and cousins would have taken an interest in the estate had
testatrix died intestate and was made to avoid a contest of the
will. In an action brought by the trustee for an accounting
making the executor and residuary legatee and the aunts and
cousins defendants, the aunts, who would have taken the entire
estate had there been no will, and the residuary legatee, each
made a claim that they or he should have received the larger
share and would have had it had the legal rights of the aunts and

cousins been known, and attacked the settlement on the ground of fraud and lack of consideration. *Held,* that both the settlement and the assignments executed and delivered in fulfillment thereof were valid.

The aunts as next of kin had the right to contest the will; the residuary legatee received a good consideration for relinquishing two-thirds of the residue and the aunts received a good consideration for forbearing a contest and the settlement, therefore, was valid, though the cousins who received a benefit therefrom had no valid claim or interest.

ACTION by trustee for an accounting.

Henry W. Williams, for plaintiff, and for Coolidge, Hulburd, McEchron, Bowden, Chahoon and Hager.

McKelvey & Stenacher, for Lawr. ce B. Sutfin, Laura B. Sutfin and Cora S. Bean.

Robert W. Fisher and Edgar T. Brackett, for Hearl L. Owen, individually, and as executor of the will of Julia Sutfin, deceased.

VAN KIRK, J.  Under two declarations of trust the property of Julia Sutfin, all personal, was held by William McEchron of Glens Falls as trustee; at her death this property was to pass to the legatees named in her will, or, in default of a will, to her next of kin. She died, leaving a last will and testament, in which she named the defendant Hearl L. Owen executor and residuary legatee, and the only other bequest was $1,000 to the Reformed Church of Schuylerville. She left her surviving no husband, descendant, ancestor, brother or sister, or descendant of brother or sister. Her nearest blood relatives were three aunts and three cousins on her mother's side and several cousins on her father's side. These were cited in the proceedings for probate of her will, where appeared Robert W. Fisher, with Edgar T. Brackett counsel, for Dr. Owen;

Henry W. Williams, for the collaterals on the mother's side, and George H. Stenacher, for the collaterals on the father's side. Each group of collaterals filed, or was about to file, objections to the probate of the will, when an oral contract of settlement was made between the residuary legatee and the contestants (the church legatee took no part in the settlement), by the terms of which Dr. Owen was to assign two-thirds of the residue of the estate (that is, the estate after deducting the church legacy) to the aunts and cousins — and the will was to be probated. The two groups agreed to divide the two-thirds. In determining how the two-thirds should be divided among the collaterals Dr. Owen had no interest. Dr. Owen then executed two assignments, one to each group of collaterals, and the will was admitted to probate. It should be noticed that there is not one assignment to the aunts and one to the cousins. It is not claimed that it was the intention of the parties to settle with the aunts as one body and the cousins as another. There was one settlement. The two assignments were made for convenience and because different attorneys appeared for the different groups. This settlement was made while all the parties honestly and in good faith believed that the aunts and cousins would have taken an interest in the personal estate had Julia Sutfin died intestate, and was made to avoid a contest of the will.

William McEchron died prior to the death of Julia Sutfin, and his daughter, Margaret M. Bowden, was named trustee in his stead. She qualified and was acting as such at the time of the death of Julia Sutfin. This action is brought by the trustee for an accounting, making the executor and residuary legatee and the aforesaid aunts and cousins defendants.

The allegations of the complaint are not put in issue.

The defendants (except the church) have answered, setting up affirmative defenses and serving their respective answers on their co-defendants. The residuary legatee asks a reformation of the assignment to the maternal collaterals, so that it will exclude the cousins and award to each aunt one-fifth of the one-third of the residue assigned by it; also that the other assignment be declared void. The aunts ask (a) that the assignment to the paternal collaterals be adjudged void and the assignment to them be reformed to award to them two-thirds of the residue; or, this failing, (b) that it be adjudged that the aunts own one-half of the residue; or, this failing, (c) that both the assignments and the probate of the will be declared void. The paternal collaterals ask that the settlement and the assignments be upheld.

The attack on the settlement is made on account of fraud and lack of consideration. No objection is taken by any party to the form of the action, or to the jurisdiction of this court to determine the issues presented.

By chapter 18 of the Laws of 1909, the Statute of Distributions was placed in the Decedent Estate Law (§ 98). Prior to that time it had been in the Code (§ 2732). Each of said sections contained corresponding subdivisions. Subdivision 12 has been changed. Prior to 1898 it read: " No representation shall be admitted among collaterals after brothers and sisters' children." In 1898 the above words were stricken out and the following words substituted: " Representation shall be admitted among collaterals in the same manner as allowed by law in reference to real estate." This change gave rise to the *Davenport Case,* 172 N. Y. 454, and other similar cases. By the Laws of 1905, chapter 539, this subdivision was again changed to read: " No representation shall be admitted among collaterals after brothers and sisters descendants."

So it remains to-day, with the wording the same as it was prior to 1898, except that the word " descendants " is used instead of " children." Prior to 1903, subdivision 5 was as follows: " If there be no widow, and no children, and no representative of a child, the whole surplus shall be distributed to the next of kin, in equal degree to the deceased, and their legal representatives." In 1903, chapter 367, after the decision in the *Davenport* case, this subdivision was amended by adding provisions for distribution to brothers and sisters and their descendants, substantially in the words of the statute for descent of real estate in like circumstances. These are all the changes having any bearing in this case which have been made in the statute. Subdivision 10 reads as follows: " Where the descendants, or next of kin of the deceased, entitled to share in his estate, are all in equal degree to the deceased, their share shall be equal." After the changes above mentioned, the statute, so far as it affects this case, is as it was prior to 1898. Decisions in cases which arose while the amendment of 1898 was in force, and dealing with that amendment, have little, if any, application to this case.

The collateral line of aunts and descendants of aunts and uncles, being in more remote degree of relationship to the deceased than the line of brothers and sisters and their descendants, had there been no will, the aunts would have taken the entire estate. Aunts and cousins are of unequal degree. The aunts are the only next of kin of equal degree; they are collaterals " after brothers and sisters descendants," and no representation is admitted to bring in the cousins. *Adee* v. *Campbell*, 79 N. Y. 52; *Matter of Butterfield*, 211 id. 395, 404; *Matter of Nichols*, 60 Misc. Rep. 299; *Matter of Polansky*, 90 id. 273.

There was then a mistake of law as to the rights of the cousins, but not as to the right of the aunts. No

intentional wrong was done. No party or attorney realized the mistake of law being made. There was no actual fraud or misrepresentation. Attorneys of long experience and of marked ability took part in the settlement. Just prior to the settlement, Mr. Stenacher asked Mr. Fisher if he had examined certain cases as to the rights of the cousins to take; but Mr. Fisher did not hesitate to make the settlement and Mr. Stenacher at the time believed and still believes that his clients, cousins, would take an interest, in case the will should be denied probate, because no brother or sister survived. The attorneys opposing him here have used pages of brief and cited and expounded many cases to demonstrate that Mr. Stenacher must have known he was wrong in this view. While I think he was, and is, wrong, I do not think he realized it. He did not overreach, defraud, or by concealment deceive the other attorneys, all of whom have had a much wider experience and longer term of service at the bar.

What is the position of the parties and of what do they complain? The probate of the will cannot be attacked in this case, because the Surrogate's Court has exclusive jurisdiction to revoke probate. The assignments have been executed and delivered; the contract of settlement is executed, though no moneys have been paid over. The church legatee, not a party to the settlement, has full right to its legacy under the probate of the will, and this court cannot interfere with its established right. The residuary legatee, not one of the next of kin of the deceased, could enjoy some part of the estate by probate of the will only. The aunts were the next of kin and would take the estate if probate of the will were refused. The residuary legatee and the aunts have secured substantial shares in the estate by the settlement. The aunts and the residuary legatee, however, claim each that they or he should

have received a larger share, and would have a larger share had the legal rights of the aunts and cousins been known. The cousins of course do not complain.

Is the settlement then void for constructive fraud — mutual mistake of law? Such mistake of law is not sufficient for relief in equity. *Gilbert* v. *Gilbert,* 9 Barb. 532; *Jacobs* v. *Morange,* 47 N. Y. 57. Parties are not relieved from obligations entered into with full knowledge of the facts but under a mistake of the law. *Bank of U. S.* v. *Daniel,* 12 Pet. 48; *Shotwell* v. *Murray,* 1 Johns. Ch. 512. Where money has been paid over, without mistake of fact, but under a mistake of law, it cannot be recovered. *Newburgh Sav. Bank* v. *Woodbury,* 173 N. Y. 60; *Doll* v. *Earle,* 59 id. 638; *Knox* v. *Lee,* 12 Wall. 457; *Flynn* v. *Hurd,* 118 N. Y. 19, 26. Ignorance of the law excuses no one. Every man understanding the facts is presumed to understand his legal rights. This rule is as much respected in courts of equity as of law. 13 C. J. 379, § 267; *Taplin* v. *Wilson,* 4 Hun, 247. There are some exceptions to this rule, but this case does not come within any of them. Equity will sometimes relieve for a mistake of law, where the parties may be restored to their status at the time the agreement was made, but here the parties cannot be so restored, since the probate of the will may not be here questioned. The settlement is not void for fraud.

Was it without consideration? It was one complete settlement between the residuary legatee as one party and the aunts and cousins as the other. Such single settlement is not made several settlements because, in carrying it out, different steps were taken and two assignments were made.

The aunts were the next of kin and had the right to contest the will. There was then a good consideration between the parties for the settlement. *White* v.

*Hoyt,* 73 N. Y. 505; *Lockwood* v. *Title Ins. Co.,* 73 Misc. Rep. 296, 299; *Dovale* v. *Ackerman,* 11 id. 245, 247. The residuary legatee received a good consideration for relinquishing two-thirds of the residue and the aunts received a good consideration for forbearing a contest. The settlement was valid, though some persons who received a benefit therefrom had no valid claim or interest. 13 C. J. 325, § 164; *Pennsylvania Coal Co.* v. *Blake,* 85 N. Y. 226, 232. To claim that a consideration, though good, is not as much, or as valuable, as it might otherwise have been is not equivalent to a claim of lack of consideration.

But the parties here are not in fact attacking the settlement itself. Both the attorney for the aunts and the attorney for the executor urge that the settlement was valid as to the aunts. They are attacking the assignment given in fulfillment of the settlement; they are in fact asking for a modification of the settlement through a modification of the assignments. But in my opinion these assignments are valid and can be enforced; a valid settlement is valid in all its parts. The consideration for the settlement is consideration for each part of it. See *Ga Nun* v. *Palmer,* 216 N. Y. 609. Where a compromise is made for the benefit of several persons, it is not essential to a recovery thereon that each of said persons should have contributed to the consideration. 13 C. J. 325, § 164. A benefit to a third person is a sufficient consideration for a compromise and for its enforcement. Id.; *Pennsylvania Coal Co.* v. *Blake,* 85 N. Y. 226, 232. If the court should modify the assignments, in any of the forms asked by a party hereto, it would not set aside the settlement, but make a new settlement for the parties, thus determining, not what they in fact did do, but what it surmises they ought to be willing to do. The court is not permitted to make a new contract for

the parties. The settlement stated the true intent as the law was understood; the court is not informed what that intent would have been under a correct understanding of the law, for no such intent ever existed. The court may not now form that intent for the parties. " Equity will not interfere for the purpose of carrying out an intention which the parties did not have when they entered into a transaction, but which they might or would have had if they had been more correctly informed as to the law." 2 Pom. Eq. Juris. § 843.

The settlement and the assignments executed in fulfillment thereof are valid.

The result is that a number of cousins, who had no legal claim or interest in the estate, have shares in this estate, and much complaint is made of this result as unconscionable and a gross miscarriage. Such complaint is hardly justified. The cousins are relatives, as much deserving of aid from the deceased as the aunts, and perhaps needing it more. The statute has arbitrarily fixed the distribution of this personal property to the aunts in case of intestacy. The deceased, who alone had the right to dispose of this personal property by will, has, her will being valid and probated, given it to others. No person may now say that the will is unconscionable, or that the aunts are wrongfully deprived of their property by that will; no more may one say that the cousins, in justice and good conscience, should have no share in the estate, if this will were invalid. They are not in the position of strangers to the deceased. There is nothing unconscionable in the cousins claiming and attempting to hold a part of the personal property because a statute, blind to particular cases, has fixed a general rule of distribution. Had the deceased owned real estate, and died intestate, the statute would give the cousins a

share. Is it unconscionable to take a share in personal estate, but conscionable to take a share in real estate? It is the will and nothing else (and the settlement alone permitted this to be proved without a contest) which gives Dr. Owen a claim. But for the will, the cousins, blood relatives, would have a more conscionable claim than he. All that Dr. Owen has he got by the settlement. To secure what he has he was willing to yield the rest. He may not complain. What the aunts have they secured by the settlement. For this amount they were willing to abandon any claim to a further share. They may not complain.

In this connection it is interesting to note that the attorney for the aunts states in his brief that the aunts desire and intend that the maternal cousins shall have their share; he also argues that in a sense of fairness (the paternal cousins being out of it) the " residue " should be divided half and half between the residuary legatee and the aunts. Thus the cousins on the paternal side would be excluded but those on the maternal side would get more than under the settlement. It does not shock the court that the cousins, who are but one degree more remote from the deceased than the aunts, get a part of the estate.

The facts as stated in the complaint are found. The trustee is to have her commissions and necessary expenses, including a counsel fee of $500, and the remainder is to be paid over to the legatees named in the will or their assigns. The account may be presented for approval and a decision accordingly for signature.

Judgment accordingly.