NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM, Respondent, v. AMORY V. ELIOT and Others, as Executors, etc., of WALTER G. ELIOT, Deceased, Appellants.

First Department, November 9, 1934.

*Charles L. Craig*, for the appellants.

*Ralph W. Thomas* of counsel [*Paxton Blair* with him on the brief; *Paul Windels, Corporation Counsel*, attorney], for the respondent.

UNTERMYER, J. The plaintiff brought this action to recover from Walter G. Eliot, a retired employee of the city of New York and a member of the retirement system, allowances paid to him from September 1, 1921, to August 31, 1925, on the ground that his pension was suspended and forfeited under section 1560 of the Greater New York Charter, because during that period Eliot held an office or position under the State of New York the compensation of which, together with retirement allowances, would exceed annually the sum of $1,200. In addition to the denials and a defense contained in his answer, Eliot counterclaimed for retirement allowances from September 1, 1925, at the rate of $97.69 per month, which concededly he had not received. The case was tried as a non-jury cause and resulted in a verdict in favor of the plaintiff and in the dismissal of the defendant's counterclaim. Eliot having died since the trial, his executors have been substituted as defendants.

The facts are undisputed. As of August 1, 1921, Eliot, theretofore an assistant engineer in the office of the president of the borough of Queens, upon retirement became entitled to an annual allowance of $1,172.38. On May 27, 1921, he had been appointed a member of the State Board of Licensing for Professional Engineers and Land Surveyors by the Regents of the University of the State of New York. He did not qualify, however, by taking the oath of office until June 30, 1921. From September 14, 1921, to August 21, 1925, he attended about 335 sessions of the Board, for which he received $10 per diem to January, 1922, and thereafter $25 per diem, in all $8,285.

At the trial Eliot offered evidence, which the court declined to receive, that in conversations with the corporation counsel and with his subordinates Eliot had disclosed his intention to accept membership in the State Board of Licenses and was informed that this would not imperil his retirement allowances. We need not inquire, however, whether there was error in the exclusion of this evidence, because at the conclusion of the plaintiff's case its counsel stated to the court that the plaintiff would not attempt to prove that the retirement allowances had been paid to the defendant without knowledge of his employment by the State.

Even though we agree with the plaintiff that Eliot was not entitled to these retirement allowances and for that reason may not recover on his counterclaim, we think the concession made at the trial required the dismissal of the complaint. Section 1560 of the charter (as amd. by Laws of 1916, chap. 201; since amd. by Laws of 1923, chap. 266) provides: " If a person who may hereafter be awarded a pension from the city of New York or any of the departments thereof, or out of any fund under said city or any of its departments, shall hold any office, employment or position under the state or city of New York or any of the counties included within said city, except the offices of commissioner of deeds and notary public, the payment of said pension shall be suspended and forfeited during and for the time he shall hold such office, position, or employment; provided, however, that this section shall not apply where the pension and the salary or compensation of the office, employment or position amount in the aggregate to less than twelve hundred dollars annually."

When Eliot became a member of the Board of Licenses under appointment by the Regents of the University he held an " office, employment or position under the state * * * of New York " in consequence of which his retirement allowances were " suspended and forfeited." This conclusion is not affected by section 1724 of the charter (added by Laws of 1920, chap. 427), which, so far as material, provides: " No other provision of law elsewhere in this act or in any other statute which provides wholly or partly at the expense of the city of New York for pensions or retirement benefits for employees in the city service, * * * shall apply to said employees who became members or beneficiaries of the retirement system established by this chapter."

This section is a limitation only upon other enactments which provide " for pensions or retirement benefits for employees in the city service." It does not apply to section 1560 of the charter, because that section does not provide for retirement benefits to employees, but on the contrary imposes a restriction on such rights. The obvious purpose of section 1724 was to preclude the possibility of a double pension — one under the retirement system and another under other provisions of the charter. Section 1560 must, therefore, be read as an express limitation on the provisions which relate to the retirement of city employees.

Even so, the plaintiff was not entitled to recover unless the established principle that there can be no recovery of a payment made under a mistake of law does not apply to a municipality or other public body. The record indicates that the plaintiff paid the allowances in good faith under the impression that Eliot was

entitled to retirement allowances notwithstanding his position as a member of the board of licenses. This also was the effect of the plaintiff's concession at the trial. The plaintiff did not pay the allowances under any mistake of fact. It paid under a misconception of the law, and for such payments it was not entitled to recover. "The rule in this State from the earliest times to the present day has been consistent and uniform in favor of the general rule that money paid under a mistake of law cannot be recovered back." (*Newburgh Savings Bank* v. *Town of Woodbury*, 173 N. Y. 55.) To the same effect are: *Doll* v. *Earle* (59 N. Y. 638); *Belloff* v. *Dime Savings Bank* (118 App. Div. 20); *Shotwell* v. *Murray* (1 Johns. Ch. 512). The peace of society requires that voluntary payments made upon a claim of right, with full knowledge of all material facts, shall not be rescinded because at some time thereafter it is found that a different rule of law applies. "There is no other principle which is safe and practicable in the common intercourse of mankind." (*Lyon* v. *Richmond*, 2 Johns. Ch. 60.)

We perceive no reason to hold that a municipality is exempt from the operation of this rule. No decision to which our attention is directed in this State or elsewhere has gone so far. It has indeed been held that a municipality cannot, by estoppel, waive compliance with statutory requirements intended for its protection. (*Winter* v. *City of Niagara Falls*, 190 N. Y. 198; *Lord & Burnham Co.* v. *City of New York*, 251 id. 198.) But those were not instances where the municipality was asserting any claim to restitution of a payment made in good faith but under a mistake of law. They were cases where the municipality was resisting liability on account of the non-performance by the plaintiff of a condition which the statute, for reasons of public policy, had imposed upon parties asserting claims against municipalities.

The judgment should be modified by dismissing the complaint, and as so modified affirmed, without costs to either party.

FINCH, P. J., MERRELL, TOWNLEY and GLENNON, JJ., concur.

Judgment modified by dismissing the complaint, and as so modified affirmed, without costs to either party.